STATE OF IOWA, Appellee, v. TEDDY TEDD, alias THEO. VAN
VALKENBERG, Appellant.

**CRIMINAL LAW:** Accomplices—Duty to Peremptorily Instruct. The
1 court must not, on a record limited almost exclusively to the testi-
mony of parties who are *manifest* accomplices, with questionable
corroboration, direct the jury to convict defendant if it is satisfied
of his guilt beyond a reasonable doubt, and at the same time avoid
the necessity for corroboration by permitting the jury to find that
said parties were not, in fact, accomplices.

**CONSPIRACY:** Declarations—Inadmissibility. It is wholly irrele-
2 vant and prejudicial, in the trial of an indictment charging *con-
spiracy*, to instruct the jury that, if it finds the conspiracy proved,
it may consider the declarations of the coconspirators, made in
the absence of the accused.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JUNE 22, 1923.

INDICTMENT for conspiracy, wherein it was charged that
the defendant conspired with Harold Hahn and Joseph Lucas
to injure the person and property of Frank Keith and Mildred
Keith, to wit, by robbing them of money and diamonds. Upon
a plea of not guilty, the defendant was tried. A verdict of
guilty was rendered, and judgment entered thereon. The de-
fendant appeals.—*Reversed.*

*Carl F. Jordan,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,*
Assistant Attorney-general, and *H. K. Lockwood,* County At-
torney, for appellee.

EVANS, J.—I. The following statement of the material facts which we quote from the brief of the State will answer the purpose of our consideration of the appeal.

"The defendant, a resident of Cedar Rapids, and apparently engaged in the sale of automobiles or used cars, had sold and delivered a car to another person, upon the direction of Mr. Keith, who told the defendant that he, Mr. Keith, would pay the defendant for the car, it appearing that the person to whom the car was delivered had sold some whisky to Mr. Keith, and the latter still owed him for the whisky. There seems to have been some delay on the part of Keith in paying the defendant for this automobile, and the defendant then decided to call upon a young man with whom he had been acquainted for a number of years, by the name of Harold E. Hahn, to assist him in getting his money. Harold Hahn was, at that time, about 20 years old, married, and living in Cedar Rapids. A few days before April 21, 1922, the defendant went to him, and told him that Keith owed him some money, and that he would not pay, and the defendant had decided that the only way he could get his money would be to steal a diamond ring that Mrs. Keith wore. In this first conversation the defendant told Hahn that Keith was yellow, and would not fight, no matter what happened, and that it would be an easy job to take the ring away from Mrs. Keith, and that they could take whatever money Mr. Keith had, at the same time. The defendant also had Hahn attempt to collect some other money that he had coming to him, and told Hahn that he was pretty well broke. The defendant did not want to do the job himself, because Keiths knew him, and would recognize him. He told Hahn it would take three to do the job, and asked Hahn to get someone to help him. A few days before the attempted robbery, Hahn and the defendant drove to the home of Joe Lucas, who was acquainted with Hahn, and Hahn told the defendant he would get Lucas to assist in the job. Hahn had a talk with Lucas in the presence of the defendant, in which he asked Lucas if he would assist them in getting the diamond ring from Mrs. Keith.. Lucas agreed to assist them. After this conversation, Hahn took the defendant over to town, and it was agreed that they were to meet Lucas at 9 o'clock at Mrs. Keith's. The defendant went to the drug store where

Mrs. Keith was working, and was gone 20 or 25 minutes, when he returned, and told Hahn that Mrs. Keith was not working that evening; so the job was called off for that time. The defendant then took Hahn out to the Keith home, and they looked over the ground. They then returned, and planned how they were to do the job. It was agreed that Hahn was to meet Joe Lucas over to Hahn's house, and they were then to go to the defendant's house, who would then see if Mrs. Keith was working; and if she was, they were to go out to Keith's and lay in wait until she came home, when they were to rob her of the diamond ring, and Mr. Keith of any money that he had. The defendant was to wait back in the shadows, because they would recognize him, unless he was needed. The defendant explained to Hahn and Lucas that the ring was worth about $400. He also explained that, if they got caught, they were to say nothing, and that he would get them out of the trouble. The night of the attempted robbery, Lucas and Hahn left any articles of identification that they had upon them at the defendant's. The defendant told them to park their car at a certain place, and arrange for a get-away. Hahn was to watch Keith and keep him from assisting his wife, while Lucas was to get the ring from Mrs. Keith. The defendant also showed Hahn a ledger, showing that Keith owed the defendant $60. After their conversation in the defendant's room, Hahn and Lucas got into the car, and parked it in front of the Brunswick pool hall. They then went out to Keith's place, and waited until they saw a car coming. Hahn thought it was the Keith car, and called to the defendant and Lucas to come on. The defendant, however, stayed by a lumber pile, and Hahn went down to the car, where Mrs. Keith got out and started to walk up the steps, when Lucas grabbed her arm and told her to wait a moment. This frightened her, and she ran up the steps and into the house, and Lucas after her. He tried to get into the house; but Mr. Keith got out of the automobile, and Lucas then jumped off the porch and ran, with Mr. Keith following him. He ran into a lumber pile, and Keith caught him and brought him back into his house, where the police were called. Hahn, in the meanwhile, went on up the street, where he got into the car, and drove up Mt. Vernon Avenue, where he met the defendant, who was out of breath,

and said he had seen Joe. While this robbery was being planned, and a few days before the attempt was made, Hahn and the defendant went into the drug store, to see if Mrs. Keith was there and whether she had the ring on. Hahn stayed near the front of the store, while the defendant walked back and spoke to Mrs. Keith, and saw that she was wearing the ring. He then returned, and told Hahn that Mrs. Keith was wearing the ring and a couple of other rings, but that he didn't know just how good they were. It was also agreed that, when the ring was sold, Hahn was to get $175, Lucas $25, and the defendant $75. The defendant and Hahn were to take the ring to Davenport and try to sell it there. Mrs. Keith worked in the drug store where the defendant had done some trading, and wore the diamond ring while working there. Lucas and Hahn both pled guilty to conspiracy, and were sentenced to a term of years in the Reformatory, and were serving their sentence at the time of the trial."

The foregoing statement of facts is predicated, with very slight exception, wholly upon the testimony of the coconspirators, Hahn and Lucas. Mrs. Keith testified to the unsuccessful

1. CRIMINAL LAW: accomplices: duty to peremptorily instruct. attempt at robbery of her by Lucas and Hahn on the evening of April 21st. She also testified that, a few days prior to April 21st, the defendant had called at the drug store where she was employed, and had talked with her, and that Hahn was with him at that time. She also testified that the defendant was a regular customer of the drug store, and was in there frequently. This is the sum total of the corroborating evidence, except some admissions made on behalf of defendant by his counsel in his opening statement to the jury. One of the grave questions in the case is the sufficiency of the corroborative evidence to go to the jury. In view of our conclusion upon other features of the record, and the necessity of a new trial which arises therefrom, we will not deal herein with that question. It may be entirely eliminated upon a new trial. Instruction No. 11, given by the trial court, was as follows:

"If the State has satisfied you beyond a reasonable doubt that the defendant, Teddy Tedd, alias Theo. Van Valkenberg, is guilty of the crime charged in the indictment, to wit, that

he did willfully, unlawfully, and feloniously conspire and confederate together with Harold E. Hahn and Joseph Lucas, with the intent willfully, unlawfully, maliciously, and feloniously to injure the person and property of one Frank Keith or Mildred Keith, by robbing them or either of them of money or a diamond, then you should return a verdict of guilty.''

Instruction 14 contained the following:

''If you believe from the evidence in this case that Harold E. Hahn and Joseph Lucas, or either of them, was an accomplice, and willingly took part with the defendant in the alleged crime, if any, you could not convict the defendant unless you find that there is other evidence than that of the said Harold E. Hahn and Joseph Lucas, or either of them, which tends to connect the defendant with the commission of said crime charged against him.''

It will be noted that Instruction 11 directed a verdict of guilty if the jury should be satisfied beyond a reasonable doubt of the guilt of the defendant, and this without any reference to the question of corroboration. The only qualification of this instruction to be found was contained in No. 14, the material part of which we have quoted. By this latter instruction, the court left it to the jury to find whether Hahn and Lucas or either of them was an accomplice and willingly took part with the defendant in the alleged crime. Its effect was to permit the jury to find that Hahn and Lucas were *not accomplices,* and to find also, upon their testimony alone, that the defendant was guilty of the crime charged. The form of this instruction was unwarranted and very misleading. Hahn and Lucas *were* coconspirators. They were so charged to be, in the indictment. If coconspirators with the defendant, as charged by the State, they were necessarily accomplices, and their testimony was subject to the restrictions of the statute which forbids a conviction thereon without corroborative evidence tending to connect the defendant with the commission of the offense. Manifestly, if Hahn and Lucas were not coconspirators, then there was no conspiracy. This, of itself, would defeat the prosecution upon this particular charge. The jury should have been instructed that, for the purpose of the prosecution under this indictment, Hahn and Lucas must be deemed accomplices in the

alleged offense, and that the defendant could not be convicted upon their testimony alone, without statutory corroboration; and this is so, however well satisfied the jury might have been to accept the testimony of Hahn and Lucas as sufficient evidence of defendant's guilt. It was the peremptory duty of the jury to acquit the defendant unless they could find, upon the record, that there was other sufficient corroborative evidence than that of the accomplices, tending to connect the defendant with the commission of the offense. The jury should have been so charged.

II. Instruction No. 9 given by the trial court was as follows:

"You will carefully inquire and determine whether it is proven that a conspiracy existed between the defendant, Teddy Tedd, alias Theo. Van Valkenberg, and Harold E. Hahn and Joseph Lucas, or either of them, and in so considering you are entitled to take into account all the evidence showing when and where and under what circumstances the defendant and the said Hahn and Lucas, or either of them, were together, and what was said by and between the parties at the time or times they were together, if you find the fact so to be; and if you find from the evidence that the defendant, Teddy Tedd, alias Theo. Van Valkenberg, and said Hahn and Lucas, or either of them, did so conspire, *then you may consider the declarations and statements of the said Hahn and Lucas or either of them,* if any were made, during the existence of such conspiracy, in pursuance of or in furtherance of such conspiracy, in the absence of said defendant, Teddy Tedd, alias Theo. Van Valkenberg, as bearing upon the guilt or innocence of the said defendant; but, if such conspiracy is not proven, then you must not consider any statements, acts, or declaration of the said Hahn and Lucas, or either of them, not made or done in the presence of the said defendant, Teddy Tedd, alias Theo. Van Valkenberg."

*2. CONSPIRACY: declarations: inadmissibility.*

Instruction No. 10 was as follows:

"Under the law, where a conspiracy is once established, and until the completion and consummation of the object in view, if the conspiracy lasts that long, every act and declaration of one conspirator in pursuance of the original concerted plan,

done and in reference to any furtherance of the common object, even in the absence of the other conspirator, is, in contemplation of the law, the act and declaration of them all, and is, therefore, evidence against each; and all are deemed to assent to or commend what is said or done by any of them in furtherance of the common object of the conspiracy. In this case, the court has admitted testimony as to the act and declarations of persons whom the State claims were coconspirators. Some of these acts and declarations were done and made not in the presence of the defendant. Under the law herein given, you will reject any testimony in regard thereto unless you find that the defendant, Teddy Tedd, alias Theo. Van Valkenberg, conspired and confederated with Harold E. Hahn and Joseph Lucas, or either of them, and that the statements and acts not made or done in the presence of the defendant, Teddy Tedd, alias Theo. Van Valkenberg, were, in fact, made by a person so conspiring and confederating with said defendant."

It will be noted that Instruction 10 is a substantial repetition of Instruction 9. These instructions purported to deal with a rule of evidence. This rule, in substance, is that, when a conspiracy is proved, every conspirator is charged with knowledge and responsibility for the acts and statements of his coconspirators said and done pursuant to the conspiracy, and before its consummation. The rule had no function to serve in this case. If the alleged coconspirators, Hahn and Lucas, had committed the contemplated robbery of Mrs. Keith, and if the defendant were under prosecution *for such robbery,* notwithstanding that he was absent in person from the scene thereof, then it would be proper for the State to show that the robbery was perpetrated pursuant to a conspiracy to which defendant was a party. The conspiracy being proved, the defendant would be charged with responsibility for the acts and statements of his coconspirators. Such is not the case before us. The objective of the prosecution is not to show crime perpetrated pursuant to a conspiracy. The crime charged is the conspiracy itself, and without any reference to the overt acts perpetrated pursuant thereto. The only burden upon the State is to prove the conspiracy. If the conspiracy is proved by legal evidence, then the defendant is guilty. The acts and declarations of Hahn and Lucas in the absence of

the defendant were not, and could not be, admissible as proof of the conspiracy. An analysis of these instructions reduces them to this: Certain acts and statements of Hahn and Lucas are presented to the jury as a part of the proof of defendant's guilt. The jury is charged that it cannot consider these statements unless it first finds the defendant guilty of the conspiracy; and that, if he is guilty of the conspiracy, then the acts and statements are admissible to prove his guilt. What function was there for such acts and statements to serve as evidence if, before the consideration, the jury must first find from *other* evidence that the defendant was guilty of conspiracy? The instruction was not germane to the issue, and should not have been given at all. We have considered whether it might not be deemed nonprejudicial, because the record discloses no acts and statements of Hahn and Lucas made in the absence of the defendant, except the sworn testimony of these parties as witnesses upon the trial. The rule in question has no application to the *testimony* of the coconspirators. Their testimony as witnesses is admissible. This only emphasizes the irrelevancy of the instructions at that point. The jury must have understood something from them. It could not apply them to the appropriate issue of the case before it, without misapplying them. We are constrained to hold, therefore, that the giving of these instructions was prejudicial error. We discover nothing else in the record that requires our special attention. The defendant has assigned 65 errors, and has argued them all quite impartially. Such multiplicity is not helpful to us. It is quite unnecessary at any time for counsel to point out 65 errors, in order to obtain a reversal. Having thoroughly considered the record, he ought to be willing to perform, himself, the function of a fanning mill. For the errors pointed out, the judgment below is reversed, and a new trial ordered.—*Reversed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.