C. E. YEANOS, Appellant, v. SKELLY OIL COMPANY, Incorporated, Appellee.

No. 43031.

DECEMBER 17, 1935.

REHEARING DENIED MARCH 20, 1936.

G. C. Dalton, for appellant.

Swan, Martin & Martin, for appellee.

HAMILTON, J.—Chestnut street runs north and south and is the principal business street in the city of Atlantic, Iowa. Plaintiff-appellant is the owner of lots 8, 9, and 10 in block 33, and the defendant-appellee, Skelly Oil Company, is the owner of lots 11 and 12 in block 33. Upon lot 10 is located a brick building which has been used for some years as a moving picture theater. The theater building is rented and operated by tenants of the appellant.

Under a permit from the city council of Atlantic, Iowa, Skelly Oil Company installed a superservice station on lots 11 and 12; this being the property immediately south of appellant's moving picture theater. The service station and theater building face the east; the service station being located upon the southeast corner of block 33. Prior to the erection of the service station, there was an old three-story brick building situated upon lots 11 and 12. The entrance to the service station is from Sixth street, which runs east and west along the south side of the service station lots. There is a solid brick wall between the service station and the theater building. The front part of the service station building is occupied and used as a lunchroom. This room is leased to third parties and has no connection with the service station. There is no entrance or driveway from Chestnut street into the Skelly property. The only driveway is from Sixth street. The Skelly building does not extend to the south line of the lots, but there is a low curb or cement wall located on the line between the sidewalk and lot line, running from the southeast corner of the lunchroom directly south, which prevents entrance by vehicles to the oil station from Chestnut street. The lunchroom is about 15 or 18 feet in width east and west. There is an entrance to the lunchroom from the east and also one from the south.

Immediately back and west of the lunchroom is a room used for tire and battery service, and immediately west of this is an office room in which is located gentlemen's and ladies' restrooms. These rooms are all inclosed, and there is a canopy extending south from the office building out over the six pumps, and underneath this canopy and around the pumps and extending out and connecting with the street pavement on Sixth street the ground is covered with cement paving, making a broad smooth entrance to the station. Back and west of the office and restrooms is a compartment containing grease racks where cars are lubricated and greased. Beyond this, to the west, are rooms in which wash racks are located. Immediately across Sixth street to the south is an open block or park. The place where cars are refueled is about the center of the lots east and west. The storage tanks are underground, and the entire structure is installed in accordance with the most approved plans and methods, and in accordance with the specifications of the city ordinance, and

is being operated according to the most approved standards with the latest and best equipment in use to reduce hazards.

There are no serious legal questions involved; the question to be determined being whether the evidence establishes the alleged nuisance. Summarized, the elements entering into the alleged nuisance as claimed by appellant consist of the storing of large quantities of gasoline and distillate; the odors from exhausts of motor vehicles and from gasoline and oil used in operating the filling station; the noise of servicing cars and trucks, and the noise of motor vehicles stopping, starting, and leaving the filling station; vibration from machines used and from cars and trucks; congestion of traffic, retarding ingress and egress to the plaintiff's picture show building; the claim being that the noise and vibrations could be heard and the odors detected by the patrons of the picture show. There is also the further claim that the ordinance under which defendant obtained its permit, being Ordinance 83, is illegal and unconstitutional as granting arbitrary power to the city council to allow a filling station on one man's property and disallow it to another, without any definite rule by which the city council is to be governed, and therefore in contravention of the equal protection clause of the Fourteenth Amendment to the Federal Constitution and article 1, section 6 of the Constitution of Iowa.

■■■ We have carefully read the entire record, and are satisfied the result reached by the trial court is correct. The evidence falls far short of showing the conditions contended for by the appellant. The great weight and preponderance of the evidence is in favor of the appellee and establishes the fact that there are no annoyances or offensive odors or extraordinary hazards or congestion of traffic in connection with the location and operation of the defendant's filling station which in any way unlawfully interfere with the proper operation and enjoyment of the plaintiff's picture show building. Apparently, the fire hazard has been reduced. As the evidence shows, insurance rates have been materially reduced on the picture show building since the destruction of the old building and the erection of the service station. The vibration and noise from cars and trucks on the smooth cement approach and driveway to the station would be slight as compared to the vibration and noise from trucks rumbling over the brick pavement in front of the picture show. The theater has a seating capacity of nearly 500, and,

of the thousands who must have frequented the showroom from time to time, only the plaintiff and one other witness produced by the plaintiff testified to the presence of offensive odors, noise, etc. It is true that plaintiff testified quite positively as to the existence of all the elements of the alleged nuisance, but he has little support in the record from the testimony and the facts and circumstances surrounding the case. It is true the chemical engineer testified to the explosive character of gasoline and the danger from seepage from the underground tanks and the fact that, because of the system of draft ventilators located on top of the theater building, the odor from the gasoline in re-fueling cars could travel through the air and be taken in through these ventilators, but, on cross-examination, he admitted that under the circumstances and conditions existing and shown by the testimony he did not think that the odor would be greatly objectionable; also that, under modern methods of handling gasoline, as it is handled at this filling station, danger from fire is slight. He also admitted that, under the conditions shown by the evidence, the possibility of seepage from the underground tanks would be remote. The evidence also shows that by the system of measuring the gasoline in the storage tanks, any considerable seepage would be readily detected.

The evidence shows that there was no repair shop in connection with the service station and no noise such as would be present in adjusting carburetors and repairing cars or trucks. Cars were washed and serviced; batteries were recharged. They had a machine for keeping up the air pressure, which was used very slightly. There was also some equipment used in connection with the recharging of batteries. Every foot of the ground outside of the building, clear to the sidewalk, was covered with concrete, and the storage tanks were underneath all this. There is no evidence of any accumulation of waste material, dirt, or grease, but, on the contrary, the evidence shows the station was operated in a very efficient manner. The photographs of the building and grounds, introduced as exhibits, display a very modern up-to-date service station, sightly in appearance. The rule of law contended for by appellant is entirely too narrow and restricted as applied to modern day business in this motorized age in which we live.

 The service station is not a nuisance per se, and appellant has failed to establish its character as a nuisance in fact.

The location and regulation of such service stations comes clearly within the control of the city council under its police power as one affecting the lives, health, and safety of the inhabitants of the city, and the city council was within its statutory rights in enacting an ordinance regulating a matter of this kind. City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; Edaburn v. City of Creston, 199 Iowa 669, 202 N. W. 580; Cecil v. Toenjes, 210 Iowa 407, 228 N. W. 874; Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870, 871. In this last case this court said:

"The first question confronting us is: Is the ordinance unconstitutional, because it vests in the city council the power to determine whether a permit shall be granted? This question is fully answered in the negative by our pronouncement in City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322."

Appellant's contention that the city ordinance grants arbitrary power to the city council, permitting and allowing it to issue a permit for a filling station to one man and disallowing it to another, without any definite rule by which the city council is to be governed, and hence violates the equal protection clauses of the Federal and State Constitutions is not tenable. An examination of the cases last cited will disclose statutory authority vesting in the city council power to regulate by ordinance automobile filling stations and the manner and method of installation of the same, and it does not lie within the power of the court to pass upon the wisdom or sound judgment or lack thereof on the part of the city council in enacting the ordinance or granting the permit thereunder. Edaburn v. City of Creston, supra.

A glance at the ordinance will disclose quite definite specifications with reference to location and installation of tanks for storing, using and keeping of gasoline, kerosene, and other inflammable materials within the fire limits of the city of Atlantic, and it contains the provision that the ordinance shall apply to "all persons, firms or corporations now using, keeping or maintaining tanks or receptacles for keeping, using or storing inflammable oils and gasoline within the fire limits of the city of Atlantic, Iowa." Section 5 provides: "In considering the application for permit, the City Council shall take into consideration the size, location and place of storage of the proposed tank, its

location with reference to other buildings and their uses, and any and all matters which may in any manner affect the health, welfare and safety of the public, and may grant or refuse a permit if in its best judgment it deems it best for the welfare, health and safety of the public, etc.'' There is no attempt to delegate the power to pass upon the matter of granting or refusing a permit to an administrative officer, but this power rests in the lawmaking body of the city.

Many other propositions are presented by appellant's brief and argument. We have carefully considered the same, but, in the view we take of the case, it would serve no useful purpose to incorporate in this opinion a discussion and disposition of the other questions raised by appellant. We find no error in the record, and the decree of the trial court in dismissing plaintiff's petition and rendering judgment against plaintiff for costs is affirmed.—Affirmed.

KINTZINGER, C. J., and all Justices concur.