LAWRENCE P. SCOTT et al., Plaintiffs, Appellants, v. CITY OF WA-
TERLOO et al., Defendants, Appellees, EDWIN J. WING
et al., Interveners, Appellants.

J. E. KURTH, Plaintiff, Appellant, v. CITY OF WATERLOO et al.,
Defendants, Appellees, EDWIN J. WING et al.,
Interveners, Appellants.

No. 43802.

SEPTEMBER 21, 1937.

Pike, Sias, Zimmerman & Butler and George D. Harris, for appellants.

A. G. Reid, Swisher, Swisher & Cohrt, and W. L. Beecher, for appellees.

HAMILTON, C. J.—The two above-entitled actions involve the same question and were by agreement of the parties tried and submitted on the same record, and are so presented on this appeal. Plaintiffs and intervenors in these actions seek to enjoin and restrain the city of Waterloo and its officials from issuing a permit to the defendant, C. E. Howard, for the erection of a filling station on lots 1 and 2, Powers addition in the City of Waterloo. Powers addition is a tract of land in the shape of a right-angled triangle, with its base facing west on Kimball Avenue, its perpendicular facing north on Kingsley Avenue and its hypotenuse facing upon West Fourth Street. West Fourth Street is one of the main thoroughfares and runs through the city from a southwesterly to a northeasterly direction, and constitutes Primary Highway No. 63, upon which there is much traffic, it being a direct route from Waterloo to Des Moines. Powers addition is small in area, containing in all seven lots. Lots 1 and 2 are at the southwesterly point and lots 5 and 6 at the northeasterly point of this triangular tract. West Fourth Street is the dividing line between the first and second wards of the city and on each side of this street a large territory in each of these wards in this southwest portion of the city has by ordinance been set off as restricted residence district. All of Powers addition except lots

5 and 6 was at the time of the inception of the proceedings of the council within this restricted area in the first ward. Lots 5 and 6, upon which there was already located a filling station at the date of the establishment of said restricted district were not included in the district.

The Restricted Residence District Ordinance was enacted on July 31, 1924, and had for its legal basis and authority chapter 325 of the 1924 Code of Iowa, which is still contained in the 1935 Code (sections 6474–6476). No rules and regulations permissible under the statute are contained in this ordinance. The ordinance simply provides that no buildings or other structures except residences, schoolhouses, churches and other similar structures shall hereafter be erected * * * within said designated district, without first securing from the city council a permit therefor. On July 23, 1934, defendant C. E. Howard filed with the city council his application for a permit to construct a filling station on lots 1 and 2, Powers addition. This application was referred to the building commissioner to check. The commissioner later filed his report with the city council, which showed signatures of 79 per cent of the property owners within the 200-foot radius required by the city ordinances. On January 28, 1935, the application was referred to the ordinance committee with instructions to prepare an ordinance removing lots 1 and 2 from the restricted district. Accordingly Ordinance No. 1427 amending the original ordinance was prepared and passed, removing these lots from the restricted area. After this was done the city council on March 25, 1935, granted the permit to Mr. Howard to erect said filling station.

 This was the method the city council had always followed, with but one exception. They seemed to have the impression that they could not grant a permit to erect a filling station in a restricted residence district, and hence when they desired to grant the permit, they first proceeded to remove the lots from the restricted district and then granted the permit. The validity of this ordinance (No. 1427) was attacked in this case, and the trial court held it invalid, and no appeal was taken by the city; hence that matter is not before us. The trial court also held that the passage of such an ordinance was not a necessary act precedent to granting the permit, and further held that a permit had been granted and that unless the council in granting the same acted arbitrarily, their action was final, and held that their action was

not arbitrary, and sustained the council's action. It is from this finding that the plaintiffs and interveners have appealed.

Appellants contend that (a) the trial court erred in finding that a permit had been granted; (b) the so-called permit was only granted after the passage of the amending ordinance purporting to remove the lots in question from the restricted residence district, and the trial court having held the amending ordinance invalid, the permit failed with the ordinance; (c) granting a permit under the circumstances would be arbitrary and an unreasonable exercise of authority and invalid, (d) discriminatory, (e) repugnant to the spirit and purpose of the statute (chapter 325 of the Code); the action of the council is not supported by facts showing such change in circumstances necessary to the validity of such act; (f) erection of such filling station would constitute a nuisance and work a permanent injury to plaintiffs and interveners; (g) granting of this permit is a violation of section 1 of the 14th Amendment to the Constitution of the United States and sections 6 and 9 of Article I of the State Constitution, and finally (h) is a special favor and permits favoritism, no one else having been granted such a permit, and in one instance the council refused such permit and the Supreme Court upheld the action of the city council (see case of Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870), the defendant, Howard, being one of the objectors in that instance.

██ It will be observed that this case does not involve the zoning statute found in chapter 324 of the Code, but the authority of the council to enact the ordinance establishing restricted residence districts is in chapter 325, sections 6474-6476, Code of 1935. This statute is not prohibitive, but regulatory, and comes within the police power of the state, and all constitutional questions raised by appellant have heretofore been passed upon by this court, the leading case in this state being City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1115, 184 N. W. 823, 831, 188 N. W. 921, 23 A. L. R. 1322. See, also, Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870. In the Manhattan Oil Co. case, in discussing the validity of the foregoing statutes under which cities are given power to create restricted residence districts, the court said:

"It does not prohibit the erection within the restricted district of business buildings, shops, factories, gasoline stations, or

any other class of buildings. It does provide, however, that the described area shall constitute a residence district, and that no buildings shall thereafter be erected therein except residences, schoolhouses, churches, and similar structures, *without first procuring from the city council a permit therefor.* In other words, the provision so made is a regulation, and not a prohibition. That the regulation is, to this extent, a legitimate and reasonable exercise of the city's police power, is supported by a practically unbroken array of authority.''

■■■ The Restricted Residence District Ordinance adopted by the city of Waterloo is in accord with these statutory provisions, and it is therefore valid. There was no necessity to remove by ordinance the lots in question from the restricted area before granting the permit. The statute and ordinance expressly authorize the granting of such permits upon such reasonable rules and regulations as may be provided. The fact that no rules and regulations are contained in this particular ordinance does not invalidate it. Marquis v. City of Waterloo, supra. The condition upon which the permit was granted in this case was that the plans for said station be submitted for approval of the council. This action was started before any plans were prepared and submitted. We cannot assume that this requirement will not be insisted upon by the city council. On the other hand, it is to be presumed that the city council will do its duty in the performance of its official acts. Therefore, the contention of appellant that the council was not acting under this ordinance and did not in fact grant the permit, and that the action of the trial court invalidating the ordinance whereby an attempt was made to remove lots 1 and 2 from the district likewise rendered nugatory the permit, is not tenable.

■■■ The matter of regulating the manner and method of installation of filling stations is purely within the police power, and is subject to be regulated by the city council, and such stations are not a nuisance per se, and there is no evidence in this record—and the court is not at liberty to assume such fact—that this station will be installed in such a way as to be and constitute a nuisance in fact. On the contrary, Councilman Fowler, as a witness for the defendant, testified that the council frequently granted permission for erection of filling stations in the city of Waterloo, that this had been done several times in the past two

years, and they always required submission of the plans and specifications to the council for their approval.

■■■ The council exercises control over the character of the station to be erected and requires modern, up-to-date filling stations where they grant permits for their erection, and no permit has been granted that does not call for modern equipment and appearance.

We said in the case of Yeanos v. Skelly Oil Co., Inc., 220 Iowa 1317, 1321, 263 N. W. 834, 837:

" * * * it does not lie within the power of the court to pass upon the wisdom or sound judgment or lack thereof on the part of the city council in enacting the ordinance or granting the permit thereunder." Citing Edaburn v. City of Creston, 199 Iowa 669, 202 N. W. 580.

This brings us to the only remaining question in this appeal, that is, Was the action of the city council in granting this permit to erect a filling station on these lots, located as they were within a restricted area, an unreasonable and arbitrary or capricious exercise of authority? The learned trial court in very succinct and apt language states his findings and conclusions as follows: "The important question for decision is whether the court has the power and authority to review the action of the city council in matters of this kind. There is no provision of law for appealing such matters to the district court. The law of Iowa delegates to the city council full discretion in matters of this kind, and it has been definitely held by our supreme court that the discretion of the city council cannot be reviewed or changed by the court unless such action was arbitrary, oppressive or capricious. There has been no sufficient showing that the city council acted arbitrarily or otherwise than in good faith and in the exercise of their best judgment in granting this permit; and therefore their action cannot be disturbed or overruled by the court. If the city council had denied the permit, this court could not compel it to issue one. The action of the city council in such matters is final and conclusive, and the court has no authority to disturb it. It necessarily follows that the plaintiffs' action to enjoin the issuance of this permit must fail, and relief in that respect is therefore denied."

We have carefully gone through the record and examined all the authorities cited and fully agree with the trial court. The

statute places this regulatory power and authority in the city council, and they are the primary judges, and unless they have clearly abused this authority and exceeded a reasonable exercise of such power thus conferred, the courts should not interfere. To do this would be of itself an unauthorized and unwarranted and arbitrary exercise of the power of the court. Yeanos v. Skelly Oil Co., supra; Marquis v. City of Waterloo, supra; City of Des Moines v. Manhattan Oil Co., supra.

The members of the council inspected this property and considered that the two unsightly houses located on this corner, situated as they are clear out on the lot line and very close together, constituted a traffic hazard, and that the filling station would improve the appearance of the corner, and make it much safer from a traffic standpoint for the view would be less obstructed. Insofar as depreciation in value of the surrounding property is concerned, some of the witnesses who are now complaining erected their properties after the Mid-Continent station on the other apex of the triangle was located there, and it is rather difficult to conceive how this additional station at the other end of the apex a few rods farther west, located in the same block, would depreciate the value of the surrounding property to any great extent. Plaintiffs' witnesses, at least some of them, admitted that it would look a great deal better to have a filling station on these lots than to have the two old houses, and some of plaintiffs' witnesses were quite reluctant to say that this additional filling station in the same block with the one already there would depreciate the value of surrounding property appreciably. It seemed to be the judgment and opinion of the council, after carefully considering the matter and talking to the residents in the neighborhood, that this improvement would be an asset to that locality. The buildings situated on the lot were unsightly. Furthermore, lot 1, constituting the westerly apex of the triangle is just a three-cornered tract, unsuitable for a dwelling. There is some evidence that lots 1 and 2 taken together might be fairly suitable for residential purposes.

The action of the council seems to have been taken after full investigation, due deliberation and thorough consideration of every angle. Objections were filed and considered. Adjacent property owners were consulted. There is nothing to indicate hasty action on the part of the council. The fact that no other permits had been granted in this particular district, and that in

one instance, namely, the Marquis case, the council refused a permit, are not controlling here. The conditions and surroundings are not shown to have been identical in each case. The personnel of the council has also changed.

Furthermore, if appellants' argument is carried to its logical conclusion, it would result in making the statute and ordinance prohibitive, insofar as filling stations are concerned, whereas one of the principal arguments in favor of the constitutionality of such statutes is the fact that they are regulative only, and not prohibitive.

We seen no occasion for setting out the evidence in further detail. The record amply supports the conclusions of the trial court, and the case is accordingly affirmed.—Affirmed.

All Justices concur.