King COLE, Ambrose Saner, William Webster, Bert Bishop, Ralph McGee, H. E. Stroy, Edward Lauvstad, G. I. Armitage and Paul Ostrus, Appellees,

v.

CITY OF OSCEOLA, Intervenor,

v.

Russell BUSICK and Lorene Busick, Appellants.

No. 54037.

Supreme Court of Iowa.

Sept. 2, 1970.

P. F. Elgin, of Watson, Elgin & Hoyman, Indianola, for appellants.

L. P. Van Werden, of Reynoldson & Reynoldson, Osceola, for intervenor.

T. E. Mullin and E. T. Harvey, Jr., of Mullin, Mullin, McLaughlin & Harvey, Creston, for appellees.

MASON, Justice.

This equitable action was instituted by plaintiffs as resident owners of real estate within a restricted district in Osceola, a municipal corporation in Clarke County to enjoin Russell Busick and his wife Lorene from placing and continuing to maintain trailer-type structures on a lot in this restricted area.

Defendants, residents of Council Bluffs had acquired the tract involved in April 1968. It is described as being 230 by 130 feet less a 50 by 100-foot parcel which had been conveyed for church purposes sometime before the present suit. Busicks own a two-story apartment containing two rental units located on a portion of the lot. The apartments were occupied at the time material here.

Busicks had purchased two mobile homes for approximately $2500 and $3000 which they intended to use as rental units on their Osceola property. Before moving the units from Council Bluffs Mr. Busick made inquiry of the Osceola city clerk to determine what procedure had to be followed for placing these two units on part of his real estate without violating any city ordinances. Busick said he was told the city had certain conditions for location of mobile homes but if he wanted to make the units permanent he would have to remove the undercarriages, axles and wheels, cut off the hitch, turn the title in to the county and have the units assessed as real estate. Section 135D.26, Iowa Code, 1966.

Following this conversation in May, Busick had sewer and water lines laid and connected to lines in the apartment house basement, trenches dug 42 inches deep and filled with concrete to serve as a foundation for cement blocks to be placed around the edge so each unit would have its own foundation.

In June following completion of the foundation footings and installation of sewer and water lines Busick moved the trailers to Osceola.

When the first unit was brought to Osceola one plaintiff stopped its being placed on the Busick property. This trailer was later parked at a filling station west of Osceola. The following day Busick accompanied the movers in bringing the other trailer to Osceola. It was placed on the property.

Busick commenced to make the changes and modifications necessary for having the units converted to real estate. Before he had opportunity to remove the undercarriages, he was served with a temporary injunction restraining him and his wife from constructing or placing trailer-type structures or mobile homes on their land until further order of court. The injunction was granted on plaintiffs' ex parte application.

After the pleadings were at issue, the city intervened by joining with plaintiffs in asking that the injunction be made permanent.

Following trial on the merits the court permanently enjoined defendants from keeping, permitting and maintaining the present mobile home type structure on the real estate involved until a permit was issued by the Osceola City Council in accordance with provisions of city ordinance 95.

Defendants appeal asserting two propositions relied on for reversal. They contend the court erred in applying city ordinances governing mobile homes and restricted residential districts to defendants' structure and in granting the permanent injunction.

■■ I. Our review is de novo. Rule 334, Rules of Civil Procedure. It is our duty to review the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial court proceedings. Rouse v. Rouse, 174 N.W.2d 660, 666 (Iowa 1970).

Of course, questions not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal. In re Adoption of Moriarty, 260 Iowa 1279, 1288, 152 N.W.2d 218, 223.

II. We considered defendants' propositions other than in the order argued.

In support of the second proposition defendants contend plaintiffs are not proper parties to bring an action of abatement under the provisions of section 415.3 Code, 1966 or section 8 of municipal ordinance 95. Stated another way, defendants maintain plaintiffs as individual property owners in the restricted area had no standing to maintain this suit.

■ The record does not indicate defendants raised this objection in the trial court proceedings until perhaps in final argument. Objection made at this trial stage did not raise an issue on this contention since ordinarily a general denial is not enough to raise an issue on plaintiff's standing to sue. This was not a case where defendants had no direct knowledge of the facts relating to this issue or where plaintiffs' allegations have enlarged the scope of the general denial. The objection would not have been waived if asserted for the first time in answer but defendants failed to do so.

■ Usually, a denial of the opponents' capacity to sue is a matter that must be specifically raised in pre-trial motion or responsive pleading or is deemed waived.

A distinction is made in some jurisdictions between capacity to sue and standing to sue. It is well explained in Parker v. Bowron, 40 Cal.2d 344, 254 P.2d 6, 9. Such a distinction has significance. But there is no logical reason why a party should be required to specially raise one of these defenses in pre-trial motion or responsive pleading and not the other. For this reason we hold a party desiring to challenge an opponent's standing to sue must do so in the same manner or the defense is waived. This rule is to be applied to a party the court finds has, or in the exercise

of reasonable care should have had, knowledge prior to trial of the facts upon which he bases attack. But where a party first learns of an opponent's lack of standing during trial, rule allowing amendments of pleadings during trial is applicable. Rule 88, R.C.P.

The issue was neither presented by the pleadings nor tried by consent. See Rouse v. Rouse, supra, 174 N.W.2d at 666. Since the question presented by this proposition was not properly preserved in the trial court it presents nothing for review.

Defendants did not urge this argument against intervenor.

III. Defendants assert as one brief point in support of their first proposition that ordinance 151 is an illegal exercise of police power.

Defendants and plaintiffs argue the merits of this issue in their briefs and the court commented on the question but intervenor contends defendants failed to properly raise the question by pleading specific allegations of invalidity or unconstitutionality.

It is well settled that when the constitutionality of an ordinance is challenged all reasonable intendments must be indulged in favor of its validity. Plaza Recreational Center v. Sioux City, 253 Iowa 246, 252–253, 111 N.W.2d 758, 762–763; Zilm v. Zoning Board of Adjustment Polk County, 260 Iowa 787, 793, 150 N.W.2d 606, 610 and authorities cited in these opinions. The strong presumption in favor of a legislative act applies, as well, to zoning ordinances, Brackett v. City of Des Moines, 246 Iowa 249, 260, 67 N.W.2d 542, 547. One who attacks such legislation on constitutional grounds has the burden of pleading its invalidity and unreasonableness and assumes the burden to negate every reasonable basis upon which the ordinance may be sustained. State v. McNeal, 167 N.W.2d 674, 677 (Iowa 1969) and authorities cited.

With these principles in mind we consider intervenor's petition and defendants' answer thereto.

Division I of intervenor's petition is based on city ordinance 95 designating and establishing a restricted residential district within the corporate limits of Osceola. Defendants' violation of various sections of this ordinance is asserted. In division II the city seeks injunctive relief on the theory defendants violated ordinance 151. In this division the city, after alleging essential and material facts, sets forth the substance of various sections of the ordinance. It specifically states in this division none of defendants' real estate is licensed as a mobile home park in accordance with the provisions of the ordinance.

In answering this division defendants admit they did not obtain a permit for the parking of a trailer-type home on their real estate but never assail the constitutionality of this ordinance by specifically alleging the details of supposed invalidity.

In view of the fact that we find in our de novo review defendants offered no evidence to rebut or overcome the presumption of constitutionality of the ordinance let alone any evidence tending to affirmatively establish invalidity or unconstitutionality of this ordinance or any provision thereof it cannot be successfully maintained the issue was tried by consent.

We agree with the intervenor the validity of ordinance 151 was never properly raised by defendants' pleadings even as amended.

IV. In support of their contention ordinance 151 regulating mobile homes and mobile home parks is not applicable to them defendants maintain that when the structures are placed on permanent foundations and water and sewer connections completed as intended the units will be permanent residences included on tax rolls for general property taxation and their use will not be in violation of this ordinance.

This ordinance defines a mobile home in section 1.1 in this manner:

"A mobile home shall mean any occupied vehicle used or so constructed as to permit its being used as a conveyance upon the public streets, or highways and duly licensed or licensable, as such, and shall include self-propelled or non-self-propelled vehicles, so designed, constructed, reconstructed, or added to by means of an enclosed addition or room in such manner as will permit the occupancy thereof as a dwelling or sleeping place for one or more persons, having no permanent foundation and supported by wheels, jacks, or similar supports."

Section 11 provides:

"No permanent additions or attachments of any kind shall be built onto or become a part of any mobile home nor shall any mobile home, other than one located in a mobile home park, be attached to the ground by means of posts, piers, or foundations."

In section 16 provision is made for approval of application for construction or operation of mobile parks:

"The City Council of the city of Osceola, Iowa, shall consider said application and if found satisfactory shall instruct the city clerk, upon payment of the permit fee, to issue a mobile home park license and retain a record therefor or thereof in his office."

But defendants do not contend they intend to establish or begin construction and operation of a mobile home park within the city limits of Osceola. They propose that the two mobile homes involved " * * * be attached to the ground by means of * * * · foundations" prepared on their Osceola property. Section 11 ordinance 151, supra.

Section 2 of intervenor's ordinance 151 provides in part:

" * * * It shall be unlawful for any person * * * to park any occupied or unoccupied mobile home:

"(a) * * *.

"(b) For more than 48 hours on the premises of any occupied dwelling * * * except in a licensed mobile home park, unless a permit therefor shall have been first obtained as required herein."

Defendants concede they did not obtain the permit required by the ordinance or make application therefor.

The legislature in chapter 135D Iowa Code, 1966 regulating mobile homes and parks defined a mobile home in section 135D.1 to mean:

"[A]ny vehicle without motive power used or so manufactured or constructed as to permit its being used as a conveyance upon the public streets and highways and so designed, constructed or reconstructed as will permit the vehicle to be used as a place for human habitation by one or more persons, but shall also include any such vehicle with motive power not registered as a motor vehicle in Iowa."

Defendants' two trailer-type structures are "mobile homes" as defined in section 1.1 of the ordinance and code section 135D.1, both supra.

As stated, there was an occupied apartment house on defendants' premises. It is conceded the area was not licensed as a mobile home park. Defendants' parking the one mobile home on their premises for more than 48 hours without a permit is evidence of a violation of section 2 of the ordinance. Attaching the mobile homes to the grounds in this area by means of piers or foundations is evidence of a violation of section 11.

■ Defendants' contention ordinance 151 does not apply to them is without merit.

V. Defendants further assert inasmuch as they had installed sewer and water lines from the apartment to the spot where the cement piers had been poured as support for the mobile homes and were planning to· change the undercarriages in such manner

that the trailers would not come within the definition of a mobile home, the units would constitute permanent residential structures conforming with requirements of ordinance 95.

They maintained that when stopped by the temporary injunction they were in the act of converting the trailers to real estate in manner directed by code section 135D.-26.

This statute sets forth guide lines to be followed by a mobile home owner who desires to become eligible for certain tax benefits by converting his mobile home to real estate in the manner specified.

Defendants urge a trailer-type structure thus converted constitutes a dwelling house and is exempt from the ordinance regulations because sections 2, 3 and 4 thereof negate the necessity of a permit for the erection, construction, reconstruction, transformation or repair of any building or structure within the restricted residential district which constitutes a residence. The ordinance does not define "residences."

Section 2 of the ordinance under attack makes it " * * * unlawful to erect, construct, reconstruct, transform alter or repair any building or structure within the restricted residence district as defined herein, except residences, schoolhouses, hospitals, churches or other buildings of like or similar character, without obtaining a permit therefor from the council as hereinafter provided."

We do not interpret section 3 as applying to the factual circumstances before the court and section 4 details the requirements for obtaining a permit to erect, transform or alter any building or structure within the restricted district.

Defendants concede they did not file an application for permit.

The court determined plaintiffs and intervenors had established violations of sections 4 and 5 of the ordinance, these violations established a nuisance under the terms of section 8 and an injunction should be granted.

Section 5 refers to intended use or occupancy of any property within the district in this manner:

"The intended use or occupancy of any property which is in the judgment of the council offensive in a restricted residence district, or which in the judgment of the council creates burdens or disadvantages to any resident or his property in said district, shall require an application to be filed and the issuance of a permit as required by this ordinance. Any permit issued upon application as herein provided, shall be subject to revocation at any time by the council, without notice, for any reason which shows bad faith or misrepresentation in the procuring thereof."

Section 8 makes violations of the ordinance a nuisance. It provides:

"Any building or structure erected, transformed, altered, reconstructed, repaired, used or occupied, in violation of the provisions of this ordinance, is a nuisance and may be abated by action brought therefor in any court having jurisdiction thereof, such action being brought either in the name of the municipality, or by any property owner within such district."

The grant of injunction can be properly sustained by adopting the trial court's interpretation of the phrase "any property * * * in a restricted residence district" in section 5 as including residences and our finding that there is evidence defendants' use of their property was offensive and would cause burdens or disadvantages to residents of the district. City of Le Mars v. Fisch, 251 Iowa 149, 100 N.W.2d 14. Therefore, if we conclude the trial court reached the right result defendants' contention that it erred in basing its order for injunction upon a finding of a violation of section 2 set out supra would be of no avail since such error, if any, would not be deemed prejudicial. See Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 872.

■ We agree with the trial court's interpretation section 5 in referring to "any property" within the district did not except residences.

The question is whether there was a sufficient showing that defendants' intended use of the two house trailers within the restricted district for rental purposes was offensive within the meaning of section 5 and created burdens or disadvantages to any resident or his property within the restricted residential district. City of Le Mars v. Fisch, 251 Iowa at 154, 100 N.W.2d at 17. If such showing is made there is a violation of the ordinance.

We find from our review of the record ample evidence of a violation of section 5. A licensed real estate salesman who had been engaged in developing work in the area involved and bought Osceola property for development testified in his opinion defendants' intended use of their real estate would cause a substantial reduction in value of nearby resident property in this district. Several residents testified defendants' intended installation of trailers to be used for residential purposes in this area would be offensive and place a burden on them to their disadvantage.

■ By showing violation of section 5 intervenors in this action have shown defendants' intended use and occupancy was a nuisance under section 8 and could secure its abatement.

Defendants' intended use of their trailer-type structures as residences in this district was not excepted from regulations specified in sections 5 and 8 of ordinance 95 for the reasons urged in defendants' contention considered in this division.

VI. In another brief point defendants contend the court by implication proscribed trailer houses within a restricted residential area by applying ordinance 95 to their mobile homes. They maintain this violates the free use of their property and offends the due process and equal protection clause of the federal and state constitutions.

The city again questions sufficiency of defendants' amended pleadings to raise this constitutional issue with regard to ordinance 95. In Division III, supra, we considered the sufficiency of defendants' amended pleadings to effectively challenge validity of ordinance 151. What we said there as to the presumption of constitutionality of an ordinance is applicable to defendants' attack directed against ordinance 95.

As pointed out, division I of intervenor's petition is based on defendants' asserted violation of ordinance 95. Intervenor alleged any structure used or occupied in violation of the ordinance is a nuisance and may be abated by action brought in the name of the municipality or any property owner in the district as permitted by section 8.

Defendants deny validity of this ordinance in answer to this division. In response to intervenor's motion to make more specific defendants denied the validity of the specific section "as being a contravention of the provisions of chapter 657 of the Code of Iowa and contrary to the statutory and common law of the state of Iowa and contrary to the delegated powers granted municipalities under provisions of section 368.2."

■ As a general rule, invalidity of a statute or ordinance, in order to be relied on, must be specifically raised by the pleadings distinctly pointing out in what manner or respect the statute or ordinance violates the provision invoked and the facts relied on to show unconstitutionality must be clearly made to appear.

In Buda v. Fulton, 261 Iowa 981, 989, 157 N.W.2d 336, 341 we said:

"This court has consistently held a constitutional challenge must specify the provisions invoked and state with particularity the details of any claimed transgression. * * * [Citing authorities].

"Generally a court will not inquire into constitutional issues on its own motion. * * * [Citing authorities].

"Pursuing the matter one more step, an issue should not ordinarily be considered in a noncriminal proceeding unless fairly raised by the pleadings. * * * [Citing authorities]."

See also Peverill v. Board of Supervisors, 201 Iowa 1050, 1056, 205 N.W. 543, 545 and authorities cited.

■ Defendants' answer is not sufficient to raise the issue of due process or equal protection when tested by the foregoing principles.

Code chapter 657 defines a nuisance and specifies what constitutes a statutory nuisance. Whether the factual situation before the court creates a nuisance is argued by defendants under their proposition the court erred in granting a permanent injunction. We will consider the question in a later division.

This leaves for consideration at this point defendants' allegation section 8 is "contrary to delegated powers granted municipalities under provisions of section 368.2."

Defendants insist the trial court erred in applying ordinance 95 since municipalities have no inherent police power and can only exercise such powers as are properly delegated to them by the State; and code chapter 368 does not grant municipalities power to regulate and license trailer-type structures which have been converted to realty.

Defendants in written argument dwell on the provisions of section 368.6 which is concerned with regulating and licensing certain businesses and occupations. This section is deemed immaterial here.

Section 368.2 specified in defendants' amended answer refers to a general grant of powers and privileges to municipalities and lays down rules of construction therefor.

As noted in the trial court's conclusions, ordinance 95, authorized by section 6474, Iowa Code 1931, at time of adoption in 1932, is now authorized by chapter 415, Code, 1966. Wording of ordinance 95 clearly indicates its provisions were derived from the enabling statute and its validity has been upheld in City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, affirmed on rehearing 193 Iowa 1096, 184 N.W. 921; Scott v. City of Waterloo, 223 Iowa 1169, 274 N.W. 897; and City of Le Mars v. Fisch, 251 Iowa 149, 100 N.W.2d 14.

■ We reject defendants' contention and hold ordinance 95 does not exceed the authority given municipalities by code section 415.2 and is a valid exercise of police power. The ordinance is not contrary to section 368.2 as defendants contend.

VII. In the remaining contention under their second proposition—the court erred in granting a permanent injunction—defendants contend the evidence is insufficient to constitute either statutory or common law nuisance.

As pointed out in Division VI, supra, defendants base part of their argument in support of this contention on code chapter 657. The remainder is based on the claim plaintiffs are not proper parties to bring an action of abatement. This phase of their argument has been disposed of in Division II, supra.

Busicks maintain if none of the offenses detailed in 657.2 are applicable, the common law definition of nuisance must be applied. They insist the evidence falls short of establishing either a common law nuisance or an offense enumerated in this code section.

This is not the problem. Whether plaintiffs and intervenor established a nuisance as defined by common law or an offense designated in code section 657.2 is not involved.

We agree with the trial court's conclusion individual plaintiffs and intervenor had not shown, by a preponderance of evidence, either a statutory offense particularized in the specific code section or a common law nuisance existing on defendants' property which would be grounds for abatement.

The trial court's order granting injunction is based on a finding the evidence established a violation of section 5, ordinance 95 which the court felt authorized abatement under the provisions of section 8.

We have heretofore determined in our de novo review evidence of defendants' intended use and occupancy of their premises was sufficient to constitute a violation of section 5.

The problem is whether such violation although not a common law nuisance or one of the enumerated offenses in code section 657.2 may serve as a basis for abatement by action in court.

In Division VI, supra, we determined ordinance 95 authorized by section 6474 at the time of adoption is now authorized by chapter 415. Section 415.3 upon which section 8 is based provides:

"Any building or structure * * * used in violation of any ordinance passed under the authority of sections 415.1 and 415.2 shall be deemed a nuisance, and every such city or town is hereby empowered to provide by ordinance for the abatement of such nuisance, either by fine or imprisonment, or by action in the district or municipal court of the county in which such city or town is located, or by both; such action to be prosecuted in the name of the city or town."

The legislature by enacting section 415.3 established a statutory nuisance in addition to those specified in section 657.2.

 In view of the breadth and character of the authority conferred by the legislature upon our municipalities with respect to the safety, health, prosperity, morals, comfort and convenience of their inhabitance an ordinance in reasonably strict accord with section 415.1 and 415.2 is valid, unless the act itself is void. City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1104–1106, 184 N.W. 823, 827–828. As stated, we have upheld the constitutionality of this chapter. We hold the ordinance is reasonably in strict accord with the statutes mentioned.

The trial court reached the right result in granting the injunction. The case is therefore—Affirmed.

All Justices concur except LeGRAND, J., who takes no part.