**HEARTH CORPORATION, Appellant,**

v.

**C–B–R DEVELOPMENT CO., INC.,**
**Appellee.**

**No. 55753.**

Supreme Court of Iowa.

Sept. 19, 1973.

Marlyn S. Jensen, Des Moines, for appellant.

Jerry P. Alt, Duncan, Jones, Riley & Finley, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Plaintiff, an Iowa corporation, appeals from an adverse ruling on defendant's motion for summary judgment in a law action instituted by plaintiff to recover judgment on an alleged contract. Plaintiff endeavors to enforce a contract entered into during the period of time in which its corporate charter had been cancelled for failure to file an annual report required by sections 496A.121 and 496A.122, The Code.

In one division of its petition filed March 15, 1972, Hearth Corporation declared on a theory defendant breached a written contract purportedly executed on or about December 17, 1971. In the second division it asked recovery on the theory the breach was of an implied contract. In its amended answer, defendant, C-B-R Development Co., Inc., alleged plaintiff "had ceased to be a corporation competent to enter into any binding agreements cognizable under the laws of the State of Iowa," and subsequently moved for summary judgment on that ground. Plaintiff responded by way of motion to strike and resistance to defendant's motion for summary judgment.

The record discloses plaintiff's certificate of incorporation was cancelled pursuant to chapter 496A, The Code, on November 19, 1971, and was not reinstated until March 22, 1972. The following portion of section 496A.130 is relevant to the case before us:

"Upon the issuance of the certificate of cancellation, the corporate existence of the corporation shall terminate, subject to right of reinstatement as herein provided,

and the corporation shall cease to carry on its business, except insofar as may be necessary for the winding up thereof or for securing reinstatement and the right of the corporation to the use of its name shall cease * * *. The cancellation of the certificate of incorporation of a corporation shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred prior to such cancellation, but no action or proceeding thereon may be prosecuted by such corporation until it shall have been reinstated. * * * Unless the corporation is reinstated, the corporation, upon issuance of the certificate of cancellation, shall proceed to liquidate its business and affairs as provided by this chapter in cases of dissolution * * *."

The trial court sustained defendant's motion for summary judgment without ruling on the motion to strike. Plaintiff appeals assigning two errors for reversal: (1) the trial court erred in sustaining defendant's motion for summary judgment; and (2) the trial court erred in not striking that portion of defendant's amended answer challenging plaintiff's competency to sue.

I. Plaintiff raises four distinct arguments in support of its first assigned error.

█ First, it contends "corporate existence" may be attacked only by the state in a quo warranto action, unless the action is brought by one of those parties specified in section 496A.6, The Code, or the issue is raised as an "emergent" issue in fraud or comparable cases.

It has been held an action in quo warranto under rule 299, Rules of Civil Procedure, is appropriate to test the legality of the corporate existence of a corporation, provided the public interest requires such action. State ex rel. Maley v. Civic Action Comm., 238 Iowa 851, 28 N.W.2d 467.

Plaintiff relies on Sherwood v. Greater Mammoth Vein Coal Co., 193 Iowa 365, 378–379, 185 N.W. 279, 284–285, wherein the plaintiff sought an injunction against a corporation. The trial court held for defendant and this court affirmed, stating as follows:

" * * * The instant case is an action in equity and for injunction, in which appellant seeks to test the existence of the coal company as a corporation. The statute in regard to injunctions is section 4354. The action of quo warranto is provided for by section 4313 of the Code. Under this an ordinary action in the name of the state may be brought against a corporation acting as such, or exercising powers not covered by law, and so on. We held in Harvey v. Kirton, 182 Iowa 973, 164 N.W. 888, and Nelson v. School District, 181 Iowa 424, 164 N.W. 874, that in such a case the action of quo warranto is exclusive. In both cases an injunction was asked and denied, because the matter of testing the legality of a corporation or the election of officers therein must be determined by an action in quo warranto by the state. In the Nelson case we said, 181 Iowa, at page 434, 164 N.W. 878:

" 'We think the rule equally well settled and sound that private citizens cannot raise such question by any form of direct attack. Quo warranto is the proper, and in the absence of statute the exclusive, proceeding to determine the question of the legal existence or validity of the organization of a public corporation. * * * The essential point is that the right to draw in question the legality of an existent body of the character mentioned is the prerogative of the state, and not of private litigants. * * * *It is an application of the principle that public rights are to be vindicated by public authority.* * * * The private litigant should not be permitted to reach the same result by a change of form of action.' " (Emphasis supplied)

*Sherwood* is precedential support for the proposition the legal existence or validity of a corporate organization, whether public or private, must be tested by an action in

the nature of quo warranto. Walling v. Iowa Ins. Co., 228 Iowa 503, 513–514, 292 N.W. 157, 162–163. The rationale of *Sherwood* is well stated by the emphasized portion of the above quotation from the *Nelson* case.

■ If a party seeks merely to test the legality of the corporation, his exclusive remedy is by quo warranto. Here, however, defendant did not institute an equitable proceeding to redress a public wrong, to test the legality of plaintiff's existence. Rather, it urged as a defense the fact plaintiff lacked corporate existence because of the action by the state pursuant to chapter 496A, The Code, it did not have capacity to enter into the alleged contract and sought a summary judgment in light of that fact. As this court stated in *Walling,* supra, quo warranto is not the exclusive remedy "when the challenge to corporate legality is merely a casual issue in a case involving enforcement solely of private rights which do not relate to questions of a public interest." *Id.* 228 Iowa at 516, 292 N.W. at 163.

■ *Sherwood* and *Walling* both indicate that a question as to corporate existence can be raised by a private litigant in an action involving private rights; an action in the nature of quo warranto is appropriate only when public interests are involved. The applicable rule is stated in State ex rel. Robbins v. Shellsburg Co., 243 Iowa 734, 737, 53 N.W.2d 143, 144, in this manner: "Quo warranto or an action in the nature of quo warranto is a special proceeding and strictly statutory in character. It is available only where the act complained of is of a public interest and may not be invoked for the redress of a private right or grievance. * * * [citing authorities]." The foregoing principle was approved in Berger v. Amana Society, 250 Iowa 1060, 1071, 95 N.W.2d 909, 916. See also State ex rel. Maley v. Civic Action Comm., 238 Iowa at 860, 28 N.W.2d at 471.

Plaintiff's lack of capacity to enter into the alleged contract declared on is neither being urged by defendant to conserve or protect the public interest nor in an attempt to have the court terminate plaintiff's corporate existence, but only as a defense in defendant's private interest.

Neither our rules of procedure nor other statutory provisions relating to actions in the nature of quo warranto bar defendant from raising plaintiff's lack of capacity to enter into the alleged contract as a defense.

II. Plaintiff next argues defendant has estopped itself from denying the corporate existence of plaintiff by its dealing with plaintiff.

It contends section 496A.6 provides by implication that a party to a contract with a corporation is estopped from denying the latter's corporate existence in his defense. See section 491.65, The Code.

■ Iowa currently has two chapters under which corporations may incorporate; the provisions of the chapter under which a particular corporation is incorporated govern the actions and affairs of that corporation. Since plaintiff was incorporated under chapter 496A, The Code, only its provisions govern litigation involving plaintiff. Section 491.65 has no application to the case before us.

Plaintiff inferentially concedes section 496A.6 is nothing more than a statutory restriction of the defense of ultra vires. No cases support plaintiff's position relative to estoppel.

In Brooks v. Owen, 200 Iowa 1151, 202 N.W. 505, relied on by plaintiff, the defendant lodges permitted default judgments to be taken on notes given by them for money borrowed to finance building construction. The notes were executed in 1907 and the judgment was rendered in 1919. " * * * [I]t was not until 1923, after efforts to collect the judgment by

garnishing the tenants of the building owned by the lodges, that the claim was first advanced that they lacked the legal capacity to be sued, and that for that reason the judgment was void. The objection comes too late. The question could, in a proper manner, have been raised in the original action; but even then it must have been done before judgment. * * * [citing authorities]." Id. 200 Iowa at 1154, 202 N.W. at 506.

The court refused to decide whether defendant lodges were estopped under the code to deny their corporate existence at the time the notes were given holding they were estopped by the default judgments from doing so. The decision does not aid plaintiff here.

There is no authority section 496A.6 was enacted to effect estoppel under the circumstances contemplated under section 491.65. Chapter 496A does not contain any provision similar to section 491.65. We conclude section 496A.6 does not impliedly estop defendant from denying plaintiff's corporate existence under the record before us.

III. Plaintiff's third argument merely raises a fact issue concerning the trial court's reasoning in sustaining defendant's motion for summary judgment. Plaintiff asserts that inferentially, the trial court wrongfully treated the issue presented by defendant's motion for summary judgment as one bearing on the legality of the alleged contract rather than plaintiff's corporate capacity to contract. Although the rationale of the trial court does not appear in the record or briefs, there is no basis for such an inference. Defendant in amended answer and motion for summary judgment alleged only that the "corporate existence of the plaintiff was terminated," and never raised the "legality" of the contract itself. There is no basis to infer that the trial court rendered its ruling on matters not placed before it in defendant's motion for summary judgment or in any of the pleadings on file.

Moreover, section 496A.130 does not declare certain contracts illegal, but merely provides for the imposition of penalties upon corporations. State v. Savings Bank, 136 Iowa 79, 113 N.W. 500 has no application to contracts contested on the ground the corporation lacked "existence" at the time the contract was executed.

Rule 237(c), R.C.P., provides in part:

" * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ We determine the trial court's judgment is based on this rule. Since plaintiff's corporate existence had terminated at the time the contract declared on was alleged to have been entered into, defendant was entitled to judgment as a matter of law.

IV. Finally, plaintiff claims section 496A.130 violates the due process clause because it allows "the taking of a privilege or right without the opportunity to be heard," and also the equal protection clause as it denies domestic corporations rights made available to foreign corporations under section 496A.135. Only the former contention was raised by plaintiff in its resistance to defendant's motion for summary judgment.

We will uphold section 496A.130 if such is constitutionally permissible.

■ Ordinarily, statutes, with notable exceptions, regularly enacted by legislatures will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the validity of the legislation attacked.

■ One who challenges legislation on constitutional grounds has the burden of pleading its invalidity and unreasonableness and assumes the burden to negate

every reasonable basis upon which the statute may be sustained.

■ Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus, a statute will not be declared unconstitutional unless it clearly, palpably, and without doubt, infringes the constitution.

In support of one or more of the foregoing principles see Graham v. Worthington, 259 Iowa 845, 851, 146 N.W.2d 626, 631; Lee Enterprises, Inc. v. Iowa State Tax Com'n, 162 N.W.2d 730, 737 (Iowa 1968); State v. McNeal, 167 N.W.2d 674, 677 (Iowa 1969); Cole v. City of Osceola, 179 N.W.2d 524, 528 (Iowa 1970); State v. Guardsmark, Inc., 190 N.W.2d 397, 400 (Iowa 1971); Brown Enterprises, Inc. v. Fulton, 192 N.W.2d 773, 776 (Iowa 1971); and authorities cited in these opinions.

Plaintiff cites Koelling v. Trustees of Skiff Hospital, 259 Iowa 1185, 146 N.W.2d 284, in support of its due process argument. *Koelling* essentially stands for the principle that notice and opportunity to defend, the basic elements of due process of law, must be afforded one before his right to practice medicine may be taken away.

Section 496A.130 explicitly contemplates the giving of notice to a corporation of its delinquency and the legal ramifications. In addition to the portion previously quoted, section 496A.130 further provides in part:

"The secretary of state may cancel the certificate of incorporation of any corporation that fails or refuses to file its annual report for any year prior to the first day of October of the year in which it is due or fails to pay prior to the first day of October any fees or penalties prescribed by this chapter by issuing a certificate of such cancellation at any time after the expiration of thirty days following the mailing to the corporation of notice of the certification to the attorney general of the failure of the corporation to file such annual report or pay such fees and penalties as re-

quired by section 496A.92, provided the corporation has not filed such annual report or paid such fees and penalties prior to the issuance of the certificate of cancellation."

Plaintiff's argument relative to due process ignores the statutory provision just quoted requiring notice to the delinquent corporation of delinquency before the corporate charter *may* be cancelled by the secretary of state. During the 30-day interval provided by statute the alleged delinquent corporation may defend against the charge it has failed to file reports required by statute. If in fact the corporation has filed such required reports it may establish this fact and show the mistake. The question of whether the corporation has filed the required report is a simple matter. On the other hand, if the corporation is in fact delinquent it may during such period cure the delinquency upon which notice is based by filing the required report or reports and paying the fees and penalties assessed. It is thus accorded both notice and opportunity to defend.

The following statement from Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, which concerns statutory remedies involving the taking of an individual's property, appears relevant:

"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment —to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what

is his, free of governmental interference. * * * [citing authority].”

Section 496A.130 provides a right to notice and opportunity to be heard at a time when the termination of the corporate existence can still be prevented. The section is not constitutionally defective in any respects properly preserved and urged by plaintiff.

In our review of this law action on assignments of error, rule 334, R.C.P., we have considered each of the arguments made by plaintiff in support of its first assignment of error and find the assignment to be without merit.

V. It necessarily follows from what has been said that plaintiff's second assignment is also without merit. As a matter of fact, the court never ruled on the motion to strike nor was a ruling requested by plaintiff.

The case is therefore—Affirmed.