Tonia Lynn McCALESTER, minor, by her natural father, Vester Lee Tatum, by his next friend, Emma L. Tatum, his mother and the grandmother of the child, Appellants,

v.

HILLCREST SERVICES TO CHILDREN AND YOUTH, Appellee.

No. 2–57821.

Supreme Court of Iowa.

July 31, 1975.

Michael W. Liebbe, Davenport, and Gordon E. Allen, Des Moines, for appellants.

Stephen W. Scott of Kintzinger, Kintzinger, Van Etten, Setter & King, Dubuque, for appellee.

REYNOLDSON, Justice.

When 13-year-old Vester Lee Tatum was in the seventh grade he began an association with Lois McCalester, age 12, which two years later resulted in the illegitimate birth of Tonia Lynn McCalester. From her birth on March 10, 1973, Tonia has been under the care of Hillcrest Services to Children and Youth, a state-licensed child-placing agency. March 25, 1973, Lois signed a form surrendering all parental rights with respect to Tonia, giving the baby's care and custody to Hillcrest, authorizing her adoption, and waiving all notice of adoption proceedings. See §§ 238.27, 238.28, The Code.

Hillcrest subsequently initiated the filing of a petition to terminate Vester's parental rights pursuant to § 232.41(2), The Code, alleging the child had been "neglected" and left "dependent" by Vester. Upon issues thus joined the juvenile court denied the petition, finding the State had failed to carry its burden of proving these allegations of the petition.

June 24, 1974, Vester (by his mother as next friend) instituted this habeas corpus action against Hillcrest for custody of Tonia. The petition did not allege illegal restraint nor make reference to the child's best interests. By amendment it was asserted the child was being illegally restrained.

At trial time Vester, age 16, was attending ninth grade in school. He planned to finish high school. Vester was employed part-time by the Neighborhood Youth Corps, earning $128 every two weeks in the summer and half that amount in the winter. He was still on probation for the theft of a bike three years before trial and was involved in a subsequent episode relating to stolen stereo tapes.

This unwed father admitted providing no support for his daughter in 1973 but claimed that upon his attorney's suggestion he had turned over to the latter $150 for Tonia's support in 1974. Hillcrest had no records of Vester's response to their request for support money. He continues to see Lois but professes no intent to marry her.

Vester lives with his mother and several brothers and sisters in a four bedroom house. Other siblings have become self-supporting and left the home. The mother is unemployed and receives $478 per month aid to dependent children and will soon be "losing" two children who are included in the formula for determining her A.D.C. grant.

Trial court ruled the release to Hillcrest valid and its custody of Tonia legal. It further held Vester had not sustained his burden to show by a preponderance of the evidence he was a fit and capable custodian and that it would be in the best interest of Tonia to be placed with him. This holding conformed to our rules in habeas corpus proceedings involving child custody: the primary consideration is the best interest of the child and the right of a parent to a child's care, custody and control is not absolute. See, e. g., Halstead v. Halstead, 259 Iowa 526, 531, 144 N.W.2d 861, 864–865 (1966); Joiner v. Knieriem, 243 Iowa 470, 480, 52 N.W.2d 21, 26 (1952).

Appealing, Vester carefully skirts all issues relating to Tonia's best interests. Rather, asserting the full panoply of paren-

tal rights on the basis of an unfortunate episode of sexual precocity, he contends §§ 238.27 and 238.28, The Code, under which the child was released for adoption by her mother, and custody obtained by Hillcrest, are unconstitutional under the equal protection clause. It follows, Vester argues, Tonia is illegally restrained by the agency.

Hillcrest argues the issue of constitutionality of these statutes was not timely raised below and consequently is not preserved for review here. Alternatively, Hillcrest posits substantial arguments supporting constitutionality of the statutes.

I. No mention of the release statutes or their alleged unconstitutionality appears in the pleadings or in the trial transcript. The constitutional challenge first surfaced in a plaintiff's brief filed several days after trial was concluded. We thus reach the threshold question whether an issue is presented for review upon this appeal.

We first note rules applicable to civil proceedings apply here:

> "The general rules of pleading and practice, governing civil actions, apply in a habeas corpus case to determine custody of an infant."

—Mabbitt v. Miller, 246 Iowa 712, 719, 68 N.W.2d 740, 744 (1955).

▌ Habeas corpus proceedings involving child custody are equitable in nature and review is *de novo*. Eddards v. Suhr, 193 N.W.2d 113, 116 (Iowa 1971). As a general rule, *de novo* review encompasses only those issues properly presented, which have been raised and error, if any, preserved in course of trial. In re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974); Cole v. City of Osceola, 179 N.W.2d 524, 527 (Iowa 1970).

Vester advances no reason why, with his prior knowledge of all relevant facts, he did not launch a constitutional attack on the relevant statutes at the pleading stage. See Cole v. City of Osceola, supra at 528 ("One who attacks such legislation on con-

stitutional grounds has the burden of pleading its invalidity and unreasonableness * * *"); Buda v. Fulton, 261 Iowa 981, 989, 157 N.W.2d 336, 341 (1968) ("[A]n issue should not ordinarily be considered in a noncriminal proceeding unless fairly raised by the pleadings"); *accord*, Hearth Corporation v. C-B-R Development Co., Inc., 210 N.W.2d 632, 636–637 (Iowa 1973); Henrichs v. Hildreth, 207 N.W.2d 805, 806 (Iowa 1973).

▌ The fair play concept which found articulation in a criminal case, State v. Ritchison, 223 N.W.2d 207 (Iowa 1974), is applicable here and dictates that Vester should not be permitted to "sit idly by" while Hillcrest presented all its evidence and the hearing terminated, then for the first time challenge these statutes. *Id.* at 214.

II. Because we do not consider Vester's post-trial constitutional assaults on §§ 238.-27 and 238.28, we need turn only briefly to the present status of the parties and child. Both by unassailed statutory procedure and trial court's ruling, legal custody of Tonia is in Hillcrest for adoptive placement. Of course under the statutory formula, only the consent of Hillcrest is required. Section 600.3, The Code; Uhlenhopp, Adoption in Iowa, 40 Iowa L.Rev. 228, 241–242, 251 (1955).

▌ The question whether Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) requires notice to Vester of the initiation of proceedings for adoption is not before us here. See, however, Cheryl Lynn H. v. Superior Court for County of Los Angeles, 41 Cal.App.3d 273, 279–280, 115 Cal.Rptr. 849, 853 (1974). ("[N]or do we determine the extent of James' rights to prevent adoption of the child by a nonparent * * *. It is sufficient to recognize that he is entitled to notice of any proceeding involving change in legal custody.") It is not apparent Vester has a "veto right" in such proceeding. In re Adoption of Zimmerman, 229 N.W.2d 245 (Iowa 1975); In re Adoption of Vogt, 219 N.W.2d 529 (Iowa 1974); In re Adoption of Keithley, 206

N.W.2d 707 (Iowa 1973); In re Adoption of Clark, 183 N.W.2d 179 (Iowa 1971). Welfare of the child is paramount but not the only consideration. In re Adoption of Keithley, supra at 712; In re Adoption of Clark, supra at 184. These cases demonstrate an adoption may be decreed resulting in severance of a natural parent's rights without reference to the criteria of § 232.-41(2), The Code.

■ The uncertainty created by *Stanley* has already delayed adoptive placement of this child for more than two years. Time is now of the essence in establishing her permanent home.

We affirm trial court's decision.

Affirmed.