INDEPENDENT ORDER OF FORESTERS, Petitioner, v. WILLIAM W. SCOTT, JUDGE, et al., Respondents.

No. 43213.

MARCH 16, 1937.

Stipp, Perry, Bannister & Starzinger, for petitioner.

Havner, Flick & Powers, Henning & Baker, and J. C. France, for respondents.

STIGER, J.—The Independent Order of Foresters, one of the defendants in the main case, is the petitioner in the certiorari action. The plaintiffs in the main case, Spencer G. Frick, Robert H. France and William G. Makeman, were at the time of the merger hereinafter referred to, certificate holders in the Modern Brotherhood of America, a fraternal beneficiary society organized under the laws of the State of Iowa with its principal place of business at Mason City, Iowa, which society had over $39,-000,000 of certificates of insurance in force.

The defendants in the main case were E. W. Clark, E. W. Clark, Commissioner of Insurance of the State of Iowa, Albert Hass, James A. Hanley, A. L. Sherin, E. A. Bell, W. Pingree Curtis, Frank C. Parnell, Willard A. Knight, P. A. Bedour, Oscar Floyd, who were the officers and directors of the Modern Brotherhood of America; Frank E. Hand, Victor Morin, John Laughton, John F. Lang, Alex Stewart, C. B. Dickson, W. H. Miller, Joseph Rossbottom, T. H. Saunders, who were officers and members of the Executive Council of the Independent Order of Foresters, who entered into the merger agreement on behalf of the Independent Order of Foresters with the Modern Brotherhood of America; C. R. Parks and C. R. Parks Service Co.

The Independent Order of Foresters will be hereafter referred to as the Corporation.

The plaintiffs allege in their petition that they became certificate holders in the Corporation through a merger contract entered into between the said Corporation and the Modern Brotherhood of America on November 7, 1931, and brought the action for themselves and all other certificate holders of the Corporation and on behalf of the Corporation; that the plaintiffs made no demand upon the Corporation or its officers to commence the action because the executive officers of the Corporation are all parties to the conspiracy hereinafter alleged and it would be a useless ceremony to make a demand upon the said officers to bring the action; that on December 1, 1931, a pretended contract, identified as Exhibit B, was entered into by the Corporation through its above-named defendant officers and members of its Executive Council with the defendant C. R. Parks Service Company, which provided for the payment of $750,000 and other sums of money to the said company in consideration of the delivery by said company to the Corporation of re-insurance business in the approximate amount of $37,000,000; that said contract was one of the steps in the consummation of a conspiracy among all of the defendants to pay a secret bonus to certain officers and directors of the Modern Brotherhood of America and other parties unknown at this time to the plaintiffs for the purpose of defrauding the plaintiffs and all other certificate holders of the Corporation including those who became such by virtue of the merger agreement with the Modern Brotherhood of America and for the further purpose of depriving such certificate holders of money by diverting funds from the Corporation to the payment of the unlawful bonuses; that in furtherance of the unlawful conspiracy, secret contracts were entered into between the Corporation through its said defendant officers and the above named defendant officers and directors of the Modern Brotherhood of America, which contracts provided for the payment of large sums of money to said officers of the Modern Brotherhood of America without any consideration therefor and were entered into for the express purpose of defrauding all of said certificate holders; that under said Exhibit B, the sum of $300,000 was paid to the Parks Service Company, which was not for services to be performed by the company but was intended to be secretly distributed by the said service company to certain named defendants and other de-

fendants not known to the plaintiffs, which secret payments were in furtherance of the said conspiracy.

Said petition further alleged that in accordance with the secret special service contracts, the Corporation paid to the service company over $28,000, which was secretly distributed by the company to the holders of the special contracts; that when the merger contract was submitted to the Supreme Lodge of the Modern Brotherhood of America for approval, the other contracts were withheld and concealed; that the plaintiffs are informed and believe and charge the facts to be that in the furtherance of the conspiracy other assets and payments have been made to defendants, the amount and times of the making of which payments can only be determined by a full and complete accounting with the defendants and each of them.

Plaintiffs prayed for an accounting and for judgment against the defendants.

The merger agreement provided that the Corporation would pay the defendant officers of the Modern Brotherhood of America their annual salaries for a period of four years from the date of the merger.

The contract Exhibit B, between the Corporation and Parks Service Company, Insurance Brokers, with its principal place of business in Chicago, provided that the company agreed to deliver re-insurance of business to the approximate amount of $37,000,- 000 and the Corporation agreed to, pay for such re-insurance $750,000, $300,000 to be paid on delivery of the re-insurance and the balance in monthly installments.

The alleged secret employment contracts between the Corporation and W. Pingree Curtis provided that the company employ Curtis for a period of three years beginning December 10, 1931, and agreed to pay him $11,044.44 to be paid in monthly installments of $920.37 which contract stipulated that the compensation provided for was in addition to the salary to be paid Curtis under the merger contract. Curtis accepted the employment and agreed to give his best efforts, but no duties or obligations to be performed by Curtis were provided for by the contract. Attached to the contract is the following memorandum: In event of death of second party prior to expiration of agreement, payment to be made to Beulah Alden Curtis, wife of second party. Present address, 5841 Blackstone Avenue, Chicago, Illinois.

All of the contracts of employment were substantially the same as the Curtis contract excepting the amounts of the compensation varied.

The plaintiffs amended their petition and made the Corporation, the Independent Order of Foresters, a party defendant alleging it was a Canadian Corporation with its principal place of business at Toronto and was authorized to transact business in the state of Iowa and held a certificate for such purpose from the Insurance Commissioner of the state of Iowa and at the present time was transacting business as a life insurance company in the state of Iowa. That the Corporation was made a party defendant, not for the purpose of asking a money judgment against it, but to the end that in case a judgment was recovered by the plaintiffs that the money so recovered could be turned over to the Corporation under order of court.

The Corporation filed a separate answer admitting the merger which was approved by a special convention of the Modern Brotherhood of America, and by the Executive Council of the Corporation, the Commissioner of Insurance of the state of Iowa and the Treasury Board of the Dominion of Canada; admitted the contract Exhibit B with the Parks Service Company and alleged that in anticipation of the approval of the merger the Corporation on December 15, 1931, paid the service company $300,000. With reference to the alleged secret employment contracts the answer states that the service company employed the defendant officers and directors of the Modern Brotherhood of America to assist in rewriting and holding intact the business of the Modern Brotherhood of America, and thereafter the company induced the Corporation to assume such contracts which it did by entering into the written contracts of employment with the defendant officers of the Modern Brotherhood of America, and that the Corporation paid the monthly salaries to the said officers provided for by the merger agreement and the monthly payments due under the special employment agreements from January 1932 until May 5, 1932, on which date the Superintendent of Insurance of the Dominion of Canada ordered the Corporation to make no further payments to said officers either under the merger agreement or the employment contracts. That conferences were had whereby salaries under the merger and other contracts were reduced $297,244.24, and the employment contracts and the contract with the Parks Service Company were mutually cancelled

and the Corporation released from all liability thereon which settlements were approved by the Superintendent of Insurance of Canada and because of such settlement, accord and satisfaction, the Corporation has no claim or cause of action against the other defendants to the suit. The Corporation in its answer confirmed such settlements and again released and exonerated all the defendants from all demands and causes of action arising from or growing out of the contracts and matter alleged in plaintiffs' petition.

The plaintiffs filed a reply alleging that the approval of the merger contract by the Commissioner of Insurance of the state of Iowa was not in good faith but in furtherance of the conspiracy; that the pretended approval of the merger by the Modern Brotherhood of America was secured through fraud and as a result of the conspiracy and unlawful acts of all the defendants; that the contract with the Parks Service Company and the employment contracts were not made in good faith but as a part of the conspiracy alleged in plaintiffs' petition and that all the defendants had full knowledge of the unlawful purpose for which the money was being used and that when the sum of $300,000 was paid to the service company by the Corporation all of the defendants knew the money was to be used in making fraudulent payments to the officers and directors of the Modern Brotherhood of America and other persons in furtherance of the conspiracy. The reply further alleged that the pretended settlements and accord and satisfaction set out in the answer were not made in good faith but were made by the defendant officers and directors of the Modern Brotherhood of America and the defendant officers and directors of the Corporation who were guilty of the conspiracy for the purpose of protecting the said wrongdoers and not for the purpose of protecting the interests of the plaintiffs and other certificate holders of the Corporation; that the settlements were made without full disclosure of the facts to the members of the Executive Council of the Corporation who were not defendants in the action and to the Superintendent of Insurance of the Dominion of Canada and that said pretended settlements were made by the joint wrong-doers for the express purpose of permitting the officers of the Modern Brotherhood of America to retain the money which had been wrongfully obtained by them; that the releases of the defendants by the Corporation from all liability were not the acts of the Corporation as such but were

made by the defendant officers of the Corporation for the purpose of attempting to ratify the wrongful conspiracy and enable the parties receiving the money to retain the payments wrongfully received; that said releases were without consideration, unauthorized, illegal and void. The plaintiffs prayed that the fraudulent settlements and releases be cancelled.

The plaintiffs filed their verified application against the defendant Corporation for the production of books and papers which petition required the production of the following documents: (1) The original merger. The plaintiffs alleged that the copy of the merger contract attached to the answer was not the same as the copy attached to the plaintiffs' petition and it was necessary to produce the original merger contract in order that the court may determine the exact form and substance of the merger contract and that the production of the original was necessary for the proper presentation of plaintiffs' case. (2) The original contract between the Corporation and Parks Service Company. (3) The original contracts of employment of the officers of the Modern Brotherhood of America or any duplicate or copy of such contract; any cancelled checks or vouchers issued to such officers and any receipts for the payment of money or surrender of contracts from such officers; and all letters and telegrams received from said officers between the dates of September 1, 1930, and March 1, 1935, and copies of any telegrams or letters sent to said officers between said dates by any officers of the Corporation. (4) All minute books showing all actions of the Supreme Executive Committee or Executive Council of the Corporation between the dates of August 1, 1930, and March 1, 1935. (5) All checks issued to C. R. Parks Service Company between the dates of December 1, 1930, and January 1, 1932, and certain cancelled checks; the disbursement record of the Corporation for the months of December 1931, January, February, March and April 1932, showing the entering of checks on the disbursement record; the ledger of the Corporation for the years of 1931 and 1932, showing the posting of the above checks in the ledger.

The petition for production met all of the requirements of such a petition and definitely stated that the documents called for were material to the action and would prove the conspiracy.

The trial court entered an order to show cause why the books and papers should not be produced. The defendant Corporation filed unverified objections and exceptions to the order to show

cause which were substantially the same as the Corporation's assignments of error hereafter set out.

At the hearing on the petition for production, N. H. Armstrong, an employee of the Insurance Department of the state of Iowa, testified for the plaintiffs that he was the examiner in charge representing the state of Iowa in the examination of the Corporation made in 1933; that the ledgers used by the Corporation were loose-leaf ledgers; that the minute books were loose-leaf and, type-written and put in a binder so that they could be locked; that the employment contracts and the contract with the Parks Service Company were separate and regular contract forms and the original merger contract was separate and all detached from the other records of the company and in a separate folder. The disbursement register was loose-leaf. The witness testified that the using of the records of the Corporation during the three months of the examination did not affect the current operation of the Corporation in any way.

J. C. France testified that none of the plaintiffs had any property and that two of them were unemployed. All of this evidence at the hearing was uncontradicted.

On July 20, 1935, the trial court entered an order for production of books and papers by the Corporation and its officers at the office of the Clerk of the district court of Iowa in and for Scott County, Davenport, Iowa, which order was addressed to the Corporation and to several officers of the Corporation, naming them, and to any other officers of the Corporation who had charge of the records called for. The court found, that the balance of convenience with reference to the production of the books and papers asked for is with the applicant and that it would not seriously inconvenience the Independent Order of Foresters to produce the books and papers asked and that the same can be done without interfering with the ordinary transaction of said The Independent Order of Foresters' business; that the expense of the production of said books and papers by the Independent Order of Foresters would be less than the taking of depositions, and that all the papers and records asked for were material and relevant to the issues to be determined and ordered the production of documents substantially as required by the petition. The defendant Corporation obtained a writ of certiorari from this court to review the order for production.

The question before us is whether the order of the trial court

is invalid because the court exceeded its proper jurisdiction or otherwise acted illegally. Code section 12456.

■■■ In the case of Main v. Ring, 219 Iowa 1270, 1273, 260 N. W. 859, 861, this court stated :

"The trial court exercises a large amount of discretion in requiring the production of documents. * * * So long as its orders are within its jurisdiction, they will not be disturbed in a certiorari proceeding. * * * The only proper inquiry here is, did the trial court have the power to make the order challenged? * * * We are not concerned with the question as to whether the trial court improperly exercised the power vested in it, and thereby committed error, that could be reviewed only on appeal."

At the time the order was entered, original notice had been served only on the five defendants who were residents of the State of Iowa. Subsequently the plaintiffs obtained service of original notice in the state of Iowa on nonresident defendants and on December 15, 1936, the plaintiffs filed a motion that this court receive as evidence a certified copy of original notice and return of service showing service upon W. Pingree Curtis, Frank C. Parnell, P. A. Bedour, Willard A. Knight, C. R. Parks and C. R. Parks Service Company in the state of Iowa. Said motion is sustained.

I. The petitioner's first contention is that the order requiring the foreign Corporation to produce its books and papers and deposit them with the clerk of the Scott county district court was void and beyond the jurisdiction of the court because (a) the Corporation was a mere nominal defendant against whom no relief was sought and by whom no relief was asked. (b) The district court had no visitorial power over a foreign corporation. (c) The court was without jurisdiction to determine questions relating to the corporation's internal affairs and management.

We will consider the several propositions that the petitioner has incorporated in his first so-called assignment of error in the order presented.

■■■ A. A brief reference to the pleadings above set out will reveal that the petitioner is inaccurate in its statement that the Corporation is only a nominal defendant against whom no relief was sought and no relief asked. It is a substantial defendant.

B. The petitioner alleges that the district court has no visitorial power over a corporation of a foreign state.

Code section 11316 provides that the district court may, in its discretion by rule, require the production of any papers or books which are material to the just determination of any cause pending before it for the purpose of being inspected and copied by or for the party calling for them. Code section 8400 provides that in proceedings against a corporation, the court may, upon cause shown for that purpose, compel the officers or agents of the corporation to produce the books and records of the corporation. Code section 8432 provides that all foreign corporations and the officers and agents thereof doing business in this state shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater power.

■■■ The power of the State over foreign corporations transacting business within the State is as extensive as its power over domestic corporations. The petitioner, a foreign corporation, is transacting business in the state of Iowa and is subject to all the remedies available against domestic corporations. Weiditschka v. Supreme Tent Knights, etc., 188 Iowa 183, 170 N. W. 300, 175 N. W. 835; Frick v. Hartford Life Insurance Co., 179 Iowa 149, 159 N. W. 247; Nelson v. Nederland Life Insurance Co., 110 Iowa 600, 81 N. W. 807, 14a C. J., 1390.

■■■ C. The petitioner alleges the order was void because where officers and directors settle and compromise a dispute in which the corporation is involved and the settlement is *intra vires,* minority stock holders will not be permitted to displace corporate authority and control by substituting therefor the policy, and control of the courts, except in plain cases of such fraud or maladministration as works manifest oppression or wrong to them.

The petitioner submitted a correct abstract statement of law which has no application to the situation here. This litigation does not involve mere questions of corporate policy and management and internal affairs. The plaintiffs go deeper and attack the very merger itself and contend that the same persons who wrongfully brought about the merger secured a settlement and compromise agreement in furtherance of the conspiracy which

116

enabled them to retain a large part of the fruits of their wrongdoing.

Assuming that the compromise settlement did involve only a question of internal policy and management, it would be subject to review by the courts under petitioner's admitted exceptions to the rule. If the plaintiffs' allegations in their petition and reply are true there would be a plain case of fraud and maladministration.

■■■ · II. The petitioner's second proposition is that the order for production is void and beyond the jurisdiction of the lower court because the effect of the order is to dispossess the Corporation of its own property and to lodge the same with strangers to the court.

We held in division I of this opinion that the petitioner is not a stranger to the cause of action, but a substantial party defendant.

To sustain this proposition the petitioner claims that, by analogy the rule applicable to a subpoena duces tecum applies and cites authorities holding that books and papers produced in obedience to a subpoena duces tecum remain under the control of the person producing them and he cannot be required to deposit the same with the commissioner or clerk of the court but they must be returned to him after such uses or examination of them as may be necessary and proper has been made.

■■■ The order appealed from was granted by the trial court under the provisions of Code sections 11316, 11317 and against a *party to the action,* and required the production of the documents for inspection and copying. Hence, there is no reason for resorting to analogy or to consider the separate and distinct rules applicable to subpoena duces tecum. In the case of National Clay Products Co. v. District Court, 214 Iowa 960, loc. cit. 973, 974, 243 N. W. 727, 733, we stated:

"It seems clear that the statute * * * making provisions for compulsory production of documents for inspection before trial could have been intended to authorize an order for production against *adverse parties only.* * * * The subpoena duces tecum is ample to bring *nonparties* (in case of corporations, their officers) into court with all the books and papers in their possession. Resort to petition for production is unnecessary."

III. The petitioner claims that the order was void and be-

yond the jurisdiction of the court because it compelled the Corporation at its cost and expense to disrupt the conduct of its insurance business and bring from Toronto, Canada, and file with the clerk of the district court its original books, records and papers covering a period from September 1, 1930, to March 1, 1935.

At the hearing on the petition for production at which the petitioner was represented by counsel, the plaintiffs-respondents produced the witness N. H. Armstrong, an employee of the Insurance Department of the state of Iowa who was an examiner in charge, representing the state of Iowa in the examination of the Independent Order of Foresters in 1933. Mr. Armstrong testified that the ledgers and disbursement registers and minute books were loose-leaf and in bound form; that the contracts called for were in the usual contract form and separate from other records of the Corporation; and that the use of the records for the three months' period for the examination did not affect the current operation of the Corporation in any way.

J. C. France testified that the plaintiffs had no property and two of them were unemployed.

▌▐▌ On this record, which stands undisputed, we conclude the absence of the documents called for would not disrupt or seriously affect the conduct of the daily business of the Corporation and that the trial court was right in its finding that the balance of convenience was with the applicants for the order; that the production of the documents could be made without interfering with the ordinary transaction of business of the Corporation and that the expense of the production would be less than the taking of depositions. The trial court had the power to make the order and its requirements were well within its judicial discretion.

IV. This assignment alleges that the order was beyond the jurisdiction of the court because it should be construed in the light of the rules governing bills of discovery and on the ground that a corporation cannot answer under oath but only under its corporate seal. Petitioner urges that it is the long established rule that a discovery cannot be maintained against a corporation alone and that it is indispensable to make some proper officer, or agent of the Corporation a defendant if discovery is sought, and in the case at bar, the Corporation is an unwilling and merely

nominal defendant and no officer or agent of it is a party to the suit.

The order was addressed to the Corporation and to several of the named officers, some of whom are made defendants in this suit but upon whom no original notice has been served, and to any officer of the Corporation who has charge of any of the records called for. The question raised is, does the failure of the plaintiffs to obtain jurisdiction of any of the officers of the Corporation render the order void?

In this state, in a case where a corporation is a party, the affidavit required in the verification of pleadings may be made by any officer or agent. It is not necessary that the officers or agents be parties to the suit. This court stated in the case of Marshall Field Co. v. Oren Ruffcorn Co., 117 Iowa 157, 160, 90 N. W. 618, 619:

"Of course, a corporation cannot of itself take an oath. It necessarily and always acts through its officers and agents. Section 3581 [now section 11161] of the Code expressly authorizes a corporation when a party, to verify by agent or officer."

Code section 8400 provides that in a proceeding *against a corporation* the court may compel the officers or agents of the corporation to produce the books and records of the corporation.

Code section 11317 provides that the petitioner must state that the books and papers required are under the control *of the party* against whom the rule is sought.

 The petitioner is an adverse party defendant and the rule was sought against the Corporation. The statutory provisions for production of books and papers are a substitution for the corresponding common law proceedings.

Because of our statutory provisions, the rule in common law proceedings and the rule prevailing in equitable right of discovery that it is necessary that a proper officer of the Corporation be joined and made a party defendant because a corporation cannot answer under oath are not controlling.

With reference to this contention of the petitioner we quote from the case of Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 542, 55 L. Ed. 771, Ann. Cas. 1912D, 558, in which case it was sought to produce books and papers by subpoena duces tecum.

"Where the documents of a corporation are sought, the

practice has been to subpoena the officer who has them in his custody. But there would seem to be no reason why the subpoena duces tecum should not be directed to the corporation itself.

"Corporate existence implies amenability to legal process. The corporation may be sued; it may be compelled by mandamus, and restrained by injunction, directed to it. Possessing the privileges of a legal entity, and having records, books, and papers, it is under a duty to produce them when they may be required in the administration of justice."

We hold that the fact of jurisdiction over the Corporation was sufficient to give the trial court jurisdiction to enter the order against the Corporation.

V. The petitioner maintains that the order was illegal because the Corporation has a right to insist that the inspection be made at its principal place of business where they are kept and not a place where said books and records will pass, even temporarily, out of its possession. In support of this proposition, the petitioner cites the cases of National Clay Products Co. v. District Court, 214 Iowa 960, 243 N. W. 727; Fairbanks Morse & Co. v. District Court, 215 Iowa 703, 247 N. W. 203, 210. In the National Clay Products Co. case the court found that a complete inspection by the plaintiffs of the books of the defendant corporation would be necessary and the examination would have to embrace all of the records of the corporation.

In the instant case the documents called for have nothing to do with the daily operation of the Corporation's insurance business. In the Fairbanks Morse case, Justice Donegan, speaking for the court, states:

"It is quite probable that the production in the district court of Palo Alto county of many of the books and papers ordered to be produced by the defendant Fairbanks Morse & Company (of Chicago) might impose a great burden upon the defendant as well as seriously interfering with the orderly transaction of business at the corporation's place of business."

In each of the above cases the court applied the rule of convenience. The Corporation does not have an absolute right to have inspection made at its principal place of business. The determination of the place of the inspection depends upon the

judgment of the court made in the exercise of the discretion given it by the statute. As above stated, under all the facts and circumstances, the trial court did not abuse its discretion in requiring the deposit of the documents in the office of the clerk of the district court.

VI. Petitioner alleges that a foreign Corporation cannot be compelled by subpoena duces tecum to produce its books and records in court, where the books and records are kept at its domicile in a foreign state.

This contention is ruled by our disposition of the prior propositions of the petitioner.

VII. The petitioner states that the order is illegal because it is apparent that the defendant Corporation cannot be punished for failing to perform an act which it as a corporation cannot do or perform except by its officers or agents over none of whom has the lower court jurisdiction.

█■█ The trial court had jurisdiction to grant the order against the Corporation. That the Corporation may not comply with the order of the trial court and that the court may be unable to enforce its order, is not an adequate reason for annulling the order. The order fixes the rights of the plaintiffs and it is unnecessary for us to assume in advance that the Corporation will refuse to comply with the terms of the order. See Frick v. Hartford Insurance Company, 179 Iowa 149, loc. cit. 169, 159 N. W. 247. In this regard we call attention to Code section 11318, which provides that on failure to obey the rule (to produce books and papers) the same consequences shall ensue as if the party had failed to appear and testify when subpoenaed by the party calling for the books and papers. Code section 11337 reads as follows:

"11337. Pleading taken true. Or if he (plaintiffs in the main case) shows by his own testimony, or otherwise, that he could not have a full personal knowledge of the transaction, the court may order his pleading to be taken as true."

In the case of Frick v. Hartford Insurance Co., 179 Iowa 149, loc. cit. 172, 159 N. W. 247, 254, the court states:

"Had the court in the instant case made an order for the production of books and records of the defendant to take the accounting, upon failure of the defendant to obey such order, the petition of the plaintiff would be taken as correct."

However, the question of remedies for disobedience of the order for production is premature and not material to the issue here.

VIII. The petitioner claims the order was beyond the jurisdiction of the court because the documents called for were otherwise available to the plaintiffs and the facts sought to be established could be otherwise proved, as in the main case, (1) the Corporation offered to permit plaintiffs to inspect and copy the documents called for at its office in Toronto, Canada, in order that they might be available as evidence by deposition if plaintiffs desired to take depositions; (2) on June 25, 1935, a Commission issued out of the office of the clerk of the district court of Scott county to take depositions touching the books and records sought in the petition for production and on July 10, 1935, the depositions were taken in Toronto, originals of everything asked and true copies were furnished and incorporated in the depositions and are of record, and regardless of this record, the trial court on July 20th, ordered the Corporation to deposit the original documents which had already been produced, examined and true copies incorporated in the depositions taken.

■■■ The answer to petitioner's first claim is that depositions were not the only remedy available to plaintiffs. The trial court had jurisdiction to order the production of the documents and found that the production would not interfere with the ordinary transaction of the business of the Corporation and that the expense of production would be less than the taking of depositions. We will not disturb this finding of the court, made in the exercise of its discretion.

With reference to the contention that the documents called for were otherwise available and could be found in the depositions taken in Toronto, the record shows that the commission was issued at the instance of defendants Hass, Sherin and Bell and authorized the taking of the depositions of Norman Sommerville, a barrister and solicitor and employee of the Corporation, and since 1933, Supreme counsellor of the Corporation, and Tom Robertson, Assistant Supreme Ranger, both material witnesses for the defendants.

Mr. Sommerville testified the original documents called for by the depositions were in the possession of the Corporation and were placed in his hands for the sole purpose of making copies and refused to permit the originals to be made a part of the rec-

122

ord. Only copies of the documents were produced and introduced in evidence at the hearing on the taking of the depositions, the witnesses swearing that they were true copies of the originals that were not produced or proved.

The exhibits attached to the depositions were only a part of the documents called for by the plaintiffs, were copies, and constituted evidence for the defendant.

█■█ The plaintiffs were entitled to a production of the original documents and clearly the trial court was right in finding that they were not "otherwise available", and in not compelling the plaintiffs to rely on this evidence of the defendants. Furthermore, the order for production was entered on July 20, 1935, and the depositions were not filed in the office of the clerk of the district court until August 6, 1935, and were not before nor considered by the court at the hearing on the petition for production. The legality of the court's action must be determined from the record made at the hearing, and the depositions cannot be considered in determining the issue before us. Fronsdahl v. Civil Service Commission, 189 Iowa 1344, 179 N. W. 874; Crosby v. Clock, 208 Iowa 472, 225 N. W. 954.

IX. Petitioner claims that the plaintiffs are not entitled to a roving commission for the inspection of books and papers in order that he may ransack them for evidence to make out a supposed case and are entitled to production only when the same is material and necessary to establish their cause of action.

The petition for production was verified, especially described the books and papers called for and alleged that the documents were material to the plaintiffs' case and would prove the fraud and conspiracy alleged in the original petition.

The resistance to the petition filed by the Corporation is unverified and furthermore does not deny the materiality of the documents called for. In the case of Main v. Ring, 219 Iowa 1270, 260 N. W. 859, 862, this court had a like situation before it. In regard to it the court stated:

"The trial court determined the papers were material. Its order should not be annulled unless it appears that the papers ordered produced are clearly not material to the inquiry. The presumption should be that the court acted within its proper jurisdiction. The verified petition for the production of the documents alleges that they are material, and the particular facts

which are shown thereby, and there is no counter-showing. A petition which is verified is equal to an affidavit. The resistance in this case was not verified. Moreover, it does not deny that the papers will show what the petitioner claims for them. Under this situation, the facts. well pleaded in the petition for the rule must be accepted as true.''

██ Under the circumstances, we must hold that the order did not constitute a roving commission or a fishing bill of discovery. In this assignment the petitioner also claims that the court had no jurisdiction to order the production of original books, records and contracts affecting, and letters and telegrams to the defendants over whom the court had no jurisdiction. This proposition is met by the general rule that all that is said or done by any of the conspirators in furtherance of the conspiracy is admissible evidence against all the conspirators. Mowry v. Reinking, 203 Iowa 628, 213 N. W. 274; State v. Todd, 196 Iowa 292, 194 N. W. 184; State v. Paden, 199 Iowa 383, 202 N. W. 105; State v. Caine, 134 Iowa 147, 111 N. W. 443.

Petitioner's assignments Numbers X, XI, XII and XIII are disposed of by our ruling on its prior propositions.

We conclude that the trial court had jurisdiction to require the petitioner to produce the various documents and papers and that there was no abuse of discretion in entering said order or any part thereof, and the writ must be and is annulled. (All italics ours.) Writ annulled.

RICHARDS, C. J., and PARSONS, HAMILTON, ANDERSON, DONEGAN, SAGER, and MITCHELL, JJ., concur.

KINTZINGER, J., takes no part.