Paul B.W. MILLER, Plaintiff,

v.

The REGISTER AND TRIBUNE SYNDI-
CATE, INC. and its Directors David
Kruidenier, Dennis R. Allen, Louis P.
Norris, Michael G. Gartner and Gary G.
Gerlach, Defendants.

No. 69011.

Supreme Court of Iowa.

July 20, 1983.

Robert B. Scism of Scalise, Scism, Gentry, Brick & Brick, and John D. Hudson of Carney, Hudson, Williams & Green, Des Moines, for plaintiff.

James E. Cooney and Richard Santi of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for defendant Register and Tribune Syndicate, Inc.

Glen R. Smith of Duncan, Jones, Riley & Finley, Des Moines, for defendant directors.

CARTER, Justice.

In accordance with Iowa Code chapter 684A (1981) and rules 451–61 Iowa Rules of Appellate Procedure, the United States District Court, Southern District of Iowa (federal court) has certified to this court a question concerning the authority of the board of directors of an Iowa corporation organized under Iowa Code chapter 491 to delegate to a special committee authority to bind the corporation concerning the conduct of derivative litigation in which a majority of the directors are named as defendants.

The certified facts upon which our answer to this question must be based indicate that the Register and Tribune Syndicate, Inc. (defendant corporation) was organized under Iowa Code chapter 491 on August 8, 1951 and has continued to exist under that chapter. On September 24, 1979, plaintiff, Paul B.W. Miller, instituted this derivative action on behalf of the defendant corporation alleging that it had sold its stock at fraudulently low prices and for grossly inadequate consideration to key employees. The four individual defendants were the members of the board of directors and allegedly purchased stock on favorable terms to the defendant corporation's detriment. The complaint, as amended, alleges several different legal theories as grounds for recovery. The case is pending in the federal court.

A meeting of the board of directors of the defendant corporation was held December 11, 1981. All four of the directors, who are also the individual defendants, were present. By action of the board, the number of directors was expanded to six, and Rolland E. Grefe and Stacey R. Henderson were nominated and unanimously elected to fill the added positions. After discussion the following resolution establishing an "Independent Litigation Committee" was adopted unanimously.

RESOLVED, that pursuant to the powers reserved by this corporation and pursuant to Section 3.3 of this corporation's By-Laws, there is hereby designated an Independent Litigation Committee which shall not be a standing committee and which shall consist of at least two (2) members of the Board of Directors, none of whom was a Director of the corporation nor was in any way involved with the management of the corporation at the times referred to in the action entitled: *Paul B.W. Miller vs. The Register and Tribune Syndicate, Inc., et al.,* which is pending in the United States District Court for the Southern District of Iowa, Central Division; Mr. Rolland E. Grefe is

hereby designated a member and Chairman of the Independent Litigation Committee; Mr. Stacey R. Henderson is designated as a member of the committee; a majority of the members of the committee shall constitute a quorum and the committee shall act only by the affirmative vote of a majority of its members; subject to the foregoing, the committee shall fix its own rules of procedure and shall have the right to employ or utilize the services of counsel and other professional or nonprofessional persons at the expense of the corporation as the committee shall determine; and further

RESOLVED, that the committee shall:

1. Conduct such investigation of the circumstances surrounding all matters referred to, or which may be referred to, in the action *Paul B.W. Miller vs. The Register and Tribune Syndicate, Inc., et al.,* or any other action which is based in whole or in part upon a common nucleus of operative facts, as the committee deems necessary or desirable to determine whether the corporation or anyone acting on the corporation's behalf shall undertake or continue any litigation against one or more of the present or former Directors or present or former Officers of the corporation or against anyone else in respect of such matters or take any other action in respect thereof;

2. Make the determination contemplated in 1 above, in the exercise of the committee's business judgment and in good faith; and

3. Undertake and supervise any action necessary or appropriate to implement any such determination; and further

RESOLVED, that the committee shall have and may exercise in connection with its investigation and determination all the powers and authority of the Board of Directors, which are hereby delegated to the Independent Litigation Committee; and further

RESOLVED, that the determination made by the Independent Litigation Committee shall be final, shall not be subject to review by the Board of Directors, and shall in all respects be binding on the corporation.

At the annual meeting of stockholders of the defendant corporation held February 15, 1982, the four individual defendants and Mr. Grefe and Mr. Henderson were elected as directors.

On May 13, 1982, the independent litigation committee filed a report in which it reached the conclusion that:

The Committee believes that there is no justification for any further expenditure of legal expenses, or of other expenses, for the purpose of continuing this lawsuit.

As a direct consequence of the committee's report, the defendant corporation filed a motion for summary judgment in the federal court derivative action brought by plaintiff Paul B.W. Miller seeking dismissal thereof on the basis that the litigation had been determined by the independent litigation committee to be not in the best interests of the defendant corporation. The federal court thereupon issued the following certified question which is the subject of the present opinion:

Under the law of the State of Iowa, may the Board of Directors of a corporation organized under Chapter 491, Code of Iowa, with Articles of Incorporation and By-Laws similar to those involved here, acting through directors who are named as defendants in a derivative action brought by a minority shareholder on behalf of the corporation, (1) appoint a Special Litigation Committee composed of two directors who were not serving as directors at the time of the incidents in question, and (2) confer upon such committee the power to (a) investigate the merits of such derivative action, (b) determine in good faith whether, in its business judgment, the best interest of the corporation would be served by the prosecution, dismissal or settlement of such action, and (c) bind the corporation to its decision?

The motion for summary judgment in the derivative action involves a special application of the so-called "business judgment

rule." In its broad sense, that doctrine merely establishes a standard of care to which directors are held in corporate decision making. M. Brown & W. Phillips, *The Business Judgment Rule: Burks v. Lasker and Other Recent Developments,* 6 J.Corp.Law 453, 454–61 (1981). A specific application of the doctrine has evolved in stockholder derivative litigation by means of which corporate directors, usually acting through special litigation committees, invoke the business judgment rule to terminate derivative actions on the ground such actions are not in the best interest of the corporation. *Id.* at 453, 462. This application of the rule is based on the premise that whether or not a corporation (which is the real party in interest in a derivative action) should seek to enforce a claim in the courts is a business decision best left to internal management. It is in the latter sense that the rule has been invoked in the motion for summary judgment which precipitated the certified question now before us.

█ We have considered the broader aspects of the business judgment rule in *Independent Order of Forresters v. Scott,* 223 Iowa 105, 115, 272 N.W. 68, 74 (1937). We have not, however, had occasion to consider its application in the context in which the defendant corporation seeks to invoke it in the pending federal derivative litigation. Elements commonly required to be shown in the use of the business judgment rule in derivative actions include: (1) whether the special litigation committee appointed by the board of directors is endowed with the requisite corporate power to bind the corporation to its recommendation of dismissal; and (2) whether it has been demonstrated that the special litigation committee was disinterested, independent, acted in good faith, and that the bases for its conclusions were sufficient based upon reasonable investigative techniques. *Abbey v. Control Data Corp.,* 603 F.2d 724, 730 (8th Cir.1979), cert. denied, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Watts v. Des Moines Register and Tribune,* 525 F.Supp. 1311, 1326 (S.D.Iowa 1981); *Rosengarten v. International Telephone & Telegraph Corp.,* 466 F.Supp. 817, 822–23 (S.D.N.Y.1979);

*Maldonado v. Flynn,* 485 F.Supp. 274, 285–86 (S.D.N.Y.1980), rev'd in part, 671 F.2d 729 (2d Cir.1982); *Gall v. Exxon Corp.,* 418 F.Supp. 508, 519–20 (S.D.N.Y.1976). If these two elements are affirmatively established, the authorities are somewhat divided concerning the test to be applied by the court in determining whether to permit dismissal at the behest of the corporate representatives. Some courts have held that there should be no substantive judicial review of the decision of the corporation's representatives. The only reviewable issues for these courts are the independence and good faith of the directors or litigation committee making the decision. The leading case for this view is *Auerbach v. Bennett,* 47 N.Y.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979). Other courts have refused to defer completely to the judgment of the corporation's representatives and insist upon testing the business judgment of the committee by application of the business judgment of the court. This approach was taken by the courts in *Watts,* 525 F.Supp. at 1326; and *Zapata Corp. v. Maldonado,* 430 A.2d 779, 786–87 (Del.1981).

Briefs have been filed in this court on behalf of the plaintiff in the federal derivative action and the defendant directors in that action. Both the plaintiff and the defendant directors agree that the certified question embraces the first of those elements common to the use of the business judgment rule in derivative actions, *i.e.,* whether the special litigation committee appointed by the board of directors is endowed with the requisite corporate power to bind the corporation to its recommendation of dismissal. The plaintiff, expressly and forcefully, and the defendant directors, inferentially, also assert that the certified question seeks our decision as to the scope of judicial review which the court should employ in determining whether to dismiss the action.

Consideration of the certified question within the context of the reasons which the federal court stated in support of its decision to certify, suggests that only the element of delegation of power is involved.

The federal court suggests that the decision to certify flowed from a motion by the plaintiff to strike the report of the special litigation committee. That motion was based on an alleged lack of director authority to delegate to the committee the power to seek dismissal of the action. We find no hint in either the language of the certified question or the circumstances which prompted it that we are being asked to express any views on the scope of judicial review to be applied to the committee's decision. We therefore decline the invitation of the parties to do so.

With respect to the issue which we must decide, plaintiff contends that our answer to the certified question should be in the negative. The defendant directors respond that it must be answered in the affirmative. In determining the board's powers of delegation within the context of the certified question, we consider the effect of organic corporate law and the nature of the defendant corporation's articles and by-laws. We also consider whether the alleged wrongdoing by the directors themselves precludes their selection of a litigation committee to act for the corporation with respect to claims against the directors.

I. *Powers of Delegation Under Organic Corporate Law Affecting Chapter 491 Corporations.*

Plaintiff begins his argument on this point by recognizing that directors of Iowa corporations organized and existing under Iowa Code chapter 496A have broad powers to delegate decision making to special committees. He attempts to avoid any adverse effect which this concession might have on his own case by urging that a significant distinction exists between "modernized" corporate legislation under which most of today's corporations are organized and the "1847" version which is embodied in Iowa Code chapter 491 under which the defendant corporation in the present case is organized.[1]

Plaintiff points out that a significant example of the distinction to be observed between the old and the new in the field of corporate enabling legislation is that while the modern statutes almost universally contain express authorization for broad delegation of corporate powers, Iowa Code chapter 491 is silent with regard to the existence of any such authority. This circumstance, it is urged, militates against a decision upholding a broad delegation of corporate powers by the board of directors of a corporation organized and existing under chapter 491. Plaintiff notes that present Iowa Code section 496A.39, enacted as part of the 1959 Iowa Business Corporation Act, is an example of modern corporate legislation authorizing broad delegation of powers. He further notes that although the section in chapter 491 dealing with corporate powers was amended in 1970 (1970 Iowa Acts ch. 1235, § 1) so as to include by reference some powers expressly granted chapter 496A corporations, the powers of delegation embraced by section 496A.39 were not among those included in this amendment.

As case authority for his argument, plaintiff cites and relies on *Hearth Corporation v. C–B–R Development Co.,* 210 N.W.2d 632 (Iowa 1973). In that case, we refused to apply a section in chapter 491 which limits the defense of ultra vires with respect to corporate contracts to those contracts entered into by a corporation organized under chapter 496A. We stated in *Hearth:*

> Iowa currently has two chapters under which corporations may incorporate; the provisions of the chapter under which a particular corporation is incorporated govern the actions and affairs of that corporation. Since plaintiff was incorporated under chapter 496A, The Code, only its provisions govern litigation involving plaintiff. Section 491.65 has no application to the case before us.

210 N.W.2d at 635.

In response to plaintiff's arguments and in support of their own position with re-

---

1. The derivation of the corporate powers enumerated in section 491.3 is 1847 Iowa Acts chapter 81.

spect to the certified question the defendant directors urge that unless expressly prohibited Iowa law grants chapter 491 corporations broad authority to delegate corporate powers to agents, officers, and executive committees. They quote at length in their brief the following portion of our decision in *Schulte v. Ideal Food Products Co.,* 208 Iowa 767, 771, 226 N.W. 174, 176 (1929):

It is a well established rule that the directors of a corporation are charged with the general management of the business affairs of said corporation. In a very broad and general way, it is a generally recognized rule that the board of directors of a corporation may delegate to agents of their own appointment the performance of acts which they themselves, as directors, can legally perform. This is especially true where the delegated acts are ministerial in character. The duties of the board of directors are often, if not usually, fixed by the articles of incorporation and the by-laws of the corporation. The articles of incorporation and by-laws of the appellant corporation are not of record in this case. It is not uncommon for a board of directors to delegate certain powers to an agent or officer of the corporation, such as an executive committee or a general manager; and such powers, when not restricted by the articles of incorporation or by-laws, and when they do not involve the exercise of the discretionary powers of the board of directors themselves, are generally held to be properly delegated, and the acts of such delegated agent are binding on the corporation. Such is the general rule.

In decisions prior to the adoption of the Iowa Business Corporation Act, we approved a pattern of delegation of corporate authority whereby the power of corporate agents could come directly from the articles or by delegation by corporate directors of those powers which the articles grant to them. *Schulte,* 208 Iowa at 771, 226 N.W. at 176; *Ney v. Eastern Iowa Telephone Co.,* 162 Iowa 525, 530–31, 144 N.W. 383, 385

(1913). *See also Iowa Federation of Women's Clubs v. Dilley,* 234 Iowa 417, 418, 12 N.W.2d 815, 816–17 (1944); *Marshalltown Stone Co. v. Des Moines Brick Mfg. Co.,* 149 Iowa 141, 146, 126 N.W. 190, 193 (1910).

■ In applying this pattern of authority to our answer to the certified question, we believe that if the articles of incorporation and by-laws adopted in conformity with the articles of incorporation so provide, a corporation organized under chapter 491 may, acting through independent directors,[2] appoint a special litigation committee and confer upon such committee the power to investigate the merits of a derivative action brought by minority shareholders on behalf of the corporation, and determine in good faith whether, in the business judgment of the committee the best interest of the corporation would be served by the prosecution, dismissal or settlement of the derivative action. In reaching this conclusion, we necessarily reject plaintiff's suggestion that the failure of the legislature to expressly confer such power of delegation upon chapter 491 corporations, either in the original enactment of chapter 491 or by amendment following enactment of chapter 496A, indicates an intent by the legislature to deny such power. Our review of our corporation law indicates that chapter 491 corporations had such powers of delegation prior to the adoption of chapter 496A, which, in the absence of express curtailment by the legislature, continue unabated.

One feature of chapter 491 which tends to buttress this conclusion is the absence of any formal recognition of a board of directors as an institution of corporate management. This feature of chapter 491 is discussed in Cosson, *The Iowa Business Corporation Act,* 45 Iowa L.Rev. 12, 20–21 (1959). A consequence of such omission is that a board of directors is not even a statutory necessity for a chapter 491 corporation. *Id.* at 21. This circumstance militates in favor of inferring broad powers of

---

**2.** The words "independent directors" as used in this opinion refer to those directors meeting the

test established in note 3, infra.

delegation to corporate agencies other than a board of directors.

II. *Powers of Delegation Conferred by Articles and By-Laws of Defendant Corporation.*

■ We next turn our attention to the relevant provisions of the articles of incorporation and by-laws of the defendant corporation which relate to the power to delegate corporate authority. Sections 1 and 2 of article VI of the articles of incorporation provide:

Section 1. The affairs of this corporation shall be governed and conducted by a board, consisting of not less than three (3) nor more than fifteen (15) directors, who shall be elected by the stockholders at the annual meeting of the corporation and shall hold office for one year and until their successors are elected and qualified, subject to control or change by action of the stockholders.

Section 2. The officers of this corporation shall be a president, chairman of the board, one or more vice presidents, a secretary, and a treasurer, who shall be elected by the board of directors on the day of and immediately following the adjournment of the annual meeting of the stockholders, or as soon as practicable after the adjournment of said meeting. Two or more offices, except those of president and vice president, may be filled by the same person. *The board of directors may also appoint such assistant officers, superintendents, managers, and other agents, as may be authorized by the by-laws or by resolution of the board of directors; provided, however, that the action of the directors in these respects shall be subject to control or change by action of the stockholders.*

(Emphasis added). Sections 3.2 and 3.3 of the by-laws of the corporation provide:

3.2 The Board of Directors, by resolution, may designate two or more Directors to constitute an Executive Committee. The Executive Committee shall have and may exercise all authority of the Board of Directors, except that the Executive Committee shall have no au-

thority to take those actions specifically prohibited by law.

3.3 The Board of Directors, by resolution, may designate from among its members such other committees of the Board of Directors, each of which shall have and may exercise such authority of the Board of Directors as the resolution of the Board of Directors may provide.

When these articles of incorporation and by-laws are considered in conjointment with the power to delegate corporate authority conferred by the organic corporate law, we are satisfied that they suffice to confer upon independent directors the power to delegate to a special litigation committee, acting according to the standards assumed in the certified question, the powers which that question includes.

We note that the form of the inquiry by the federal court relates to chapter 491 corporations with articles of incorporation and by-laws "similar to those involved here." Obviously, as it affects the defendant corporation, our answer must be qualified as a result of the implications which flow from the right "to control or change" appointments by directors conferred upon the stockholders of the corporation by section 2 of article VI. We conclude that for purposes of the appointment of agents of the corporation authorized by the by-laws, this proviso serves to reverse the ordinary rule against direct participation in corporate decisions by stockholders. We believe it embraces the action of the defendant directors in appointing the special litigation committee. We express no opinion with respect to what procedural mechanisms, if any, might be used to secure required stockholder approval or waiver of the stockholders' rights of control for purposes of implementing the business judgment rule.

III. *The Effect of Alleged Director Wrongdoing on the Directors' Authority to Select a Litigation Committee.*

■ In the absence of the special litigation committee device, it would not be possible for the business judgment rule to be invoked at the instance of a board of di-

rectors if the majority of the board are alleged to be involved in the self-dealing. *United Copper Sec. Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 264, 37 S.Ct. 509, 512, 61 L.Ed. 1119, 1122 (1917); *Lewis v. Anderson*, 615 F.2d 778, 764 (9th Cir.1979), *cert. denied*, 449 U.S. 869, 1015 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Nussbacher v. Chase Manhattan Bank*, 444 F.Supp. 973, 977 (S.D. N.Y.1977). It is tacitly, if not expressly, conceded by the defendant corporation and the defendant directors in the present case that the board itself could not seek dismissal of the action against the majority of its own members by invoking the business judgment rule. The question which naturally arises is whether, given this circumstance, the board has the power to delegate to a committee the authority to do that which it may not do itself.

The litigation committee device has alarmed many commentators, who argue the trend of the decisions toward liberality in litigation committee powers is wrong and that the powers should be more circumscribed. These writings include Block and Prussin, *The Business Judgment Rule and Shareholder Derivative Actions: Via Zapata?*, 37 Bus.Law. 27 (1981); Brown, *Shareholder Derivative Litigation and the Special Litigation Committee*, 43 U.Pitt.L.Rev. 601 (1982); Cox, *Searching for the Corporation's Voice in Derivative Suit Litigation: A Critique of Zapata and the ALI Project*, 1982 Duke L.J. 959; Dent, *The Power of Directors to Terminate Shareholder Litigation: The Death of the Derivative Suit?*, 75 Nw.U.L.Rev. 96 (1980); Elfin, *An Evaluation of a New Trend in Corporate Law: Dismissal of Derivative Suits by Minority Board Committees*, 20 Am.Bus.L.J. 179 (1982); Note, *A Procedural Treatment of Derivative Suit Dismissals by Minority Directors*, 69 Calif.L.Rev. 885 (1981); Note, *Zapata: Delaware's Judicial Business Judgment Rule—A Ship Without a Rudder?*, 19 Cal.W.L.Rev. 189 (1982); Note, *The Business Judgment Rule in Derivative Suits Against Directors*, 33 U.Fla.L.Rev. 589 (1981); Note, *Special Litigation Committees: An Unwelcome Solution to Shareholders Demands*, 1981 U.Ill.L.Rev. 485; Recent

Development, *Shareholder Derivative Suits*, 8 J.Corp.L. 145 (1982).

Most of the attacks which have been launched against the use of litigation committees appointed by boards of directors whose members are tainted by self-interest have not approached the problem in terms of a limitation on the board's powers of delegation. The thrust of such attacks has been directed toward the matter of the committee's independence.

The central theme of these concerns has been focused on the "structural bias" approach, which suggests that it is unrealistic to assume that the members of independent committees are free from personal, financial or moral influences which flow from the directors who appoint them. The argument is made that this is all the more so where, as in the present federal derivative action, the members of the special committee are fellow directors.

If the certified question clearly included the element of committee independence under the certified facts we would be forced to carefully scrutinize the transaction presented for the effects of structural bias on the committee. We are only asked, however, to pass on the extent of the board's powers of delegation. We believe, however, that the form in which the certified question is cast requires us to do more than determine the extent of the powers of delegation of the board of directors as an institution. It requires us to pass upon the power of the board of directors under the certified facts in this case. Within this context, any theoretical differences between lack of power on the part of the directors to appoint a litigation committee and the inability to exercise such power as a result of a self-interest disqualification appear to be a distinction of purely semantic significance.

Several courts which have considered this question have concluded or at least assumed that the board of directors does possess the power to delegate to the special litigation committee the power to invoke the business judgment rule even where a majority of the

board is personally interested in the litigation. *Abbey,* 603 F.2d at 729; *Gall,* 418 F.Supp. at 519–20; *Zapata,* 430 A.2d at 785–86. In *Zapata* the court reasoned that the only legal effect of the self-interest taint is to disable the board from properly exercising its authority in a manner worthy of judicial deference. The court reasoned that such circumstance does not preclude the board from delegating to an independent body the power to exercise that same authority in a manner worthy of judicial deference. As one commentator has suggested, however, this approach leaves unanswered or at least fails to analyze the question of why, if the director interest is a disqualification to participation in the decision to recommend dismissal of a derivative action, is it not also a disqualification to participation in the selection of the litigation committee empowered to make the same decision. Note, *Special Litigation Committees—An Expanding and Potent Threat to Shareholder Derivative Suits,* 2 Cardozo L.Rev. 169, 201 (1980).

The American Law Institute has recently undertaken a project in this area of the law which differs somewhat from the usual restatements of the law, in that both restatements and recommendations of law are made. This format is explained in the Foreword:

> Where there is no judicial authority, or where the cases are unsatisfactory by modern standards—either because of their antiquity, or the absence of compelling analysis, or because today they just seem wrong—resort must be had to other sources. These may include the literature on the subject, the better corporate practice in the view of those experienced in the field, not limited to lawyers, and ultimately the judgment of the Institute, aided by the Reporter and his Advisers. Where the project is not in fact restating the cases, the Institute's views should take the form of recommendations, which may include recommended statutory provisions, state or federal.

*Principles of Corporate Governance and Structure: Restatement and Recommendations,* Foreword viii (Tent.Draft No. 1, April 1, 1982) (herein referred to as Corporate Governance). The Institute deals with problems such as those presented in the present case in section 7.03 of Corporate Governance.

Section 7.03 provides that derivative actions shall be dismissed upon recommendation of a litigation committee under the conditions in section 7.03(c), "but not otherwise." Section 7.03(c) requires that section 7.03(b) be substantially complied with. One of the requirements of section 7.03(b) is that the litigation committee be appointed by "independent directors." Directors who are defendants in the derivative suit are ordinarily not to be considered "independent directors" within the Institute's definition. § 7.03(e)(iv). This limitation is qualified by a provision which states that being a defendant in the action shall not alone disqualify a director from serving on or selecting a litigation committee if the court finds that the inclusion of the director as a defendant was without merit. *Id.*

The approach taken by the American Law Institute in its Corporate Governance guidelines does not articulate its recommendations in terms of a limitation on the board's powers of delegation. We believe, however, that by opting to make the decision of a special committee inoperative if the committee is appointed by directors who are parties to the litigation the recommendations of the Institute do imply a limitation on the powers of the board to invoke the business judgment rule within the context of the certified question in the present case.

Director disqualification based on structural bias was explored in *Clark v. Lomas & Nettleton Financial Corp.,* 625 F.2d 49, 52–54 (5th Cir.1980). There the court held that seemingly independent directors were disqualified from settling a derivative action when a majority of the board was elected by a stockholder who was a defendant in the suit. In so ruling, the court stated:

> Jack Booth [the principle shareholder and a defendant in the case] wielded power to strip them not only of directorates,

but of officer and consulting positions as well. Nor can we ignore the possibility of "structural bias" in this case. *Clark,* 625 F.2d at 53. The issue in the present case involves the potential for structural bias of the litigation committee appointed by directors who are defendants in the action, whereas *Clark* involved the structural bias of directors appointed by a controlling stockholder who was a defendant. Despite this distinction we conclude that the applicable principles are similar. We believe that the potential for structural bias on the part of a litigation committee appointed by directors who are parties to derivative actions is sufficiently great and sufficiently difficult of precise proof in an individual case to require the adoption of a prophylactic rule. We conclude that we should prevent the potential for structural bias in some cases by effectively limiting the powers of such directors in all cases.

In this case of first impression in this jurisdiction we hold that directors of Iowa corporations organized under chapter 491, or any other corporate enabling legislation, who are parties to a derivative action may not confer upon a special committee of the type described in the certified question the power to bind the corporation as to its conduct of the litigation.[3] We accordingly answer the certified question in the negative.

■ This decision does not render an Iowa corporation powerless to utilize the litigation committee device when a majority of its directors are parties to the action. Under Iowa law, equity has broad powers to make appointments to enable corporate functions to be carried out. *See Rowen v. LeMars Mutual Insurance Co.,* 230 N.W.2d 905, 916 (Iowa 1975) (court appointment of separate counsel for corporations); *Hali Rest, Inc. v. Treloar,* 217 N.W.2d 517, 527 (Iowa 1974) (court appointment of fiscal agent for corporation). Consistent with these decisions, we conclude that a corporation may apply to the court for appointment of a "special panel" to make an investigation and report on the pursuit or dismissal of a stockholder derivative action, which panel may be invested for these purposes with the powers of the board of directors.

The clerk is directed to proceed in accordance with Iowa Rule of Appellate Procedure 458.

CERTIFIED QUESTION ANSWERED.

All Justices concur except UHLENHOPP and HARRIS, JJ., who concur specially, WOLLE, J., who dissents, and REYNOLDSON, C.J., and McCORMICK, J., who take no part.

UHLENHOPP, Justice (concurring specially).

I concur in the majority opinion and result, but I would answer the certified question negatively on an additional ground. Under section 7.03(c)(iii) of the Restatement and Recommendations on Corporate Governance, the litigation committee device is unavailable where the action involves self-dealing between the corporation and persons having control. The action charges sales of the corporation's stock at fraudulently low prices and for grossly inadequate consideration, and purchases of it by the four directors. Manifestly, this is a charge of self-dealing by directors. *See Maclary v. Pleasant Hills, Inc.,* 35 Del.Ch. 39, 45–46, 109 A.2d 830, 836–37 (1954); *Bennett v. Breuil Petroleum Corp.,* 34 Del.Ch. 6, 15, 99 A.2d 236, 239 (1953); *Biltmore Motor Corp. v. Roque,* 291 So.2d 114, 115 (Fla.App.), *cert. denied,* 303 So.2d 639 (Fla.1974); *Katzowitz v. Sidler,* 24 N.Y.2d 512, 518–19, 249 N.E.2d 359, 363–64, 301 N.Y.S.2d 470, 475–76 (1969); *Lichtenberger v. Long Island Machinery Sales Corp.,* 71 A.D.2d 941, 947, 420 N.Y.S.2d 507, 513 (1979).

---

**3.** Because a majority of the directors in the present case are defendants in the derivative action, we answer the certified question based solely on this basis for disqualification. Notwithstanding this limitation on our holding, wherever we have used the term "independent directors" in our discussion (except as we have referred to that term as defined in other source material) we have intended to encompass directors completely free from any dual relationship which prevents an unprejudiced exercise of judgment.

The term "control" in section 7.03(c)(iii) is not used solely in the sense of owning a dominant amount of voting stock. Under section 1.04 it includes the power to exercise a controlling influence over the management of a corporation through ownership of equity interests or intermediary persons, or by contract, "or otherwise." Any one of these four directors, merely on the basis of his directorship, would not have power to exercise controlling influence over the management of the corporation. § 1.04, Comment. But this corporation had a board of four directors, and that board had charge of management of the corporation. H. Henn, *Law of Corporations* § 71 (2nd ed. 1970) ("Management of a corporation is vested in its board of directors. . . ."). Acting together, the four directors had controlling influence over the management of the corporation and came within section 7.03(c)(iii). On the basis of section 7.03(c)(iii), the litigation committee device was thus unavailable and the committee's report is of no effect.

HARRIS, J., joins in this special concurrence.

WOLLE, Justice (dissenting).

Because I disagree with division III of the majority opinion, I dissent.

In divisions I and II, the majority correctly states that Iowa Code chapter 491 and the relevant provisions of the articles of incorporation and by-laws of the defendant corporation ordinarily confer upon directors of the company the authority to delegate to a special litigation committee the powers of investigation and decision making necessary for defensive use of the business judgment rule. I believe that statement of Iowa law adequately answers the question which Chief Judge Stuart certified to this court. In division III, however, the majority adopts an exceptional "prophylactic rule", holding that when directors are named as defendants in a derivative action that power to delegate is taken away. The majority suggests appointment by the court of a "special panel" to replace the traditional special litigation committee whenever directors are defendants. I believe that exceptional division III holding unnecessarily rejects sound common-law precedents while proposing as a substitute an untried, untested, and potentially unsound system for court appointment of corporate committees.

I. The defendants contend, and plaintiff concedes, that every court that has considered this issue has upheld the authority of defendant directors to appoint special litigation committees with authority to bind the corporation. Whether the bias of defendant directors has contaminated the committee's investigation, business judgment, or eventual recommendation to the court is decided by the court if and when a report is presented for court action. *See, e.g., Abbey v. Control Data Corp.,* 603 F.2d 724, 730 (8th Cir.1979); *cert. denied,* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Maldonado v. Flynn,* 485 F.Supp. 274, 285–86 (S.D.N.Y.1980), *rev'd in part,* 671 F.2d 729 (2d Cir.1982); *Gall v. Exxon Corp.,* 418 F.Supp. 509, 519–20 (S.D.N.Y. 1976); *Zapata Corp. v. Maldonado,* 430 A.2d 779, 788–89 (Del.1981). These courts have been fully aware of the potential for corporate-committee bias; the cases insist on judicial scrutiny of committee actions to ensure that recommendations reflect disinterested and independent as well as prudent business judgment. For example, in *Zapata Corp. v. Maldonado,* 430 A.2d at 788–89, the Delaware Supreme Court articulated the following prophylactic two-step test to be applied to summary judgment motions hinged on a litigation committee recommendation:

First, the Court should inquire into the independence and good faith of the committee and the bases supporting its conclusions. Limited discovery may be ordered to facilitate such inquiries. The corporation should have the burden of proving independence, rather than presuming independence, good faith and reasonableness. If the Court determines either that the committee is not independent or has not shown reasonable bases for its conclusions, or, if the Court is not satisfied for other reasons relating to the process, including but not limited to the

good faith of the committee, the Court shall deny the corporation's motion. If, however, the Court is satisfied under Rule 56 standards that the committee was independent and showed reasonable bases for good faith findings and recommendations, the Court may proceed, in its discretion, to the next step.

The second step provides, we believe, the essential key in striking the balance between legitimate corporate claims as expressed in a derivative stockholder suit and a corporation's best interests as expressed by an independent investigating committee. The Court should determine applying its own independent business judgment whether the motion should be granted. This means, of course, that instances could arise where a committee can establish its independence and sound bases for its good faith decisions and still have the corporation's motion denied. The second step is intended to thwart instances where corporate actions meet the criteria of step one, but the result does not appear to satisfy its spirit, or where corporate actions would simply prematurely terminate a stockholder grievance deserving of further consideration in the corporation's interest. The Court of Chancery of course must carefully consider and weigh how compelling the corporate interest in dismissal is when faced with a non-frivolous lawsuit. The Court of Chancery should, when appropriate, give special consideration to matters of law and public policy in addition to the corporation's best interests.

We need not be concerned about the care with which the federal judge who certified this question to us would scrutinize the independence and integrity of the special litigation committee appointed in this case. *Watts v. Des Moines Register and Tribune*, 525 F.Supp. 1311 (S.D.Iowa 1981) is a case very similar to this one, reported less than two years ago. There Chief Judge Stuart first held that Iowa courts would apply the business judgment rule and preclude judicial interference with the decision of an independent disinterested corporate committee even though the defendant directors

who appointed the committee were themselves alleged to have committed fraud and various breaches of fiduciary duty. 525 F.Supp. at 1314, 1325. Judge Stuart then articulated and applied the tough *Zapata Corp.* balancing test, specifically providing that proof was on the defendants to demonstrate that the committee had acted independently, in good faith, and with sufficient investigation and reasonable bases for its conclusions. 525 F.Supp. at 1326. Consistent with that cautious approach, Judge Stuart held that plaintiff would be permitted to undertake further discovery concerning objective factors underlying the recommendation of the members of the special committee. 525 F.Supp. at 1329. I believe this court should adopt essentially the same rationale as did Judge Stuart and conclude that, with proper safeguards, special litigation committees can perform important functions in stockholder derivative actions even though the directors who appoint their members are themselves named as defendants.

II. Though the concept of a court-appointed panel may suggest fairness and equity, I am concerned with several theoretical and practical difficulties inherent in this new approach. Judicial review of the recommendations of a court-appointed panel may itself raise questions of bias. Perhaps more than one judge would become involved, a potential drain on our judicial resources. In different contexts, but for sound reasons, this court has stated that a court ought not interfere with the internal management of a private corporation, nor substitute its judgment for that of the board of directors. *See, e.g., Natale v. Sisters of Mercy of Council Bluffs*, 243 Iowa 582, 596, 52 N.W.2d 701, 709 (1952); *Wolf v. Lutheran Mut. Life Ins. Co.*, 236 Iowa 334, 343, 18 N.W.2d 804, 809 (1945).

I also doubt the practical utility of court-appointed special corporate panels. I am troubled by the absence of precedent. By what guidelines should the trial judge determine whether to grant such an application, whom to appoint, and how to decide such matters as who pays the panel and

how much? What access will the panel have to internal corporate records? Such practical problems as these may simply erase the use of the business judgment rule in stockholder derivative actions in this jurisdiction.

We can reasonably expect that dissident stockholders seeking to avoid the defensive use of the traditional business judgment rule may now seek to bring derivative actions in this forum. By joining corporate directors as defendants, such plaintiffs can effectively avoid corporate appointment of special litigation committees and the application of principles developed in other jurisdictions for expeditious disposition of meritless strike suits.

I therefore dissent from division III of the court's opinion and would answer yes to the question certified to us by Judge Stuart based upon the correct statement of law set forth in divisions I and II.